1833.

WHITALL
*v.*
CLARK.

</div>

---

## WHITALL and wife *v.* CLARK and another.

A wife, having a power of appointment over personalty in a marriage settlement, may make a deed in favor of her husband, and the Court will carry it into effect: provided there has been no compulsion. But, in decreeing, the Court will refer it to a master to examine the wife privately, explain her rights to her, and ascertain whether she voluntarily consented and still consents to the deed.

---

Bill by husband and wife to carry into effect an appointment of the wife in favor of the husband, executed under a power contained in an ante-nuptial settlement. The defendants were the trustees of the settlement; and the property embraced by the deed of appointment (being the avails of real and personal property) had been reduced into cash and was in the possession of these trustees. The deed directed them to pay over to the husband, on his receipt in writing, all and singular the several sums of money in their hands belonging to the wife, for the sole and only use and behoof of the said husband.

<div style="text-align:right">

*December* 3.
1833.

*Husband
and wife.
Appointment
by the latter
in favor of
the former.*

</div>

The defendants suggested the insolvency of the husband and of his being in debt; and that it was on this account the ante-nuptial settlement had been made.

Mr. *John Anthon* for the complainants.

This is an application by husband and wife, under an ap-

1833.

WHITALL
v.
CLARK.

pointment by the wife, for payment of the proceeds of the separate personal property of the wife, in the hands of trustees, to the husband, as appointee, on his own receipt and without a settlement.

I. Feme covert acting with respect to her separate personal property, is competent to act in all respects as if she were a feme sole. She has the complete property in it and may alienate it and all that arises from it in any manner she thinks proper: Clancy, p. 289. It has been settled since *Fettyplace* v. *Georges*, 1. Ves. Jr. 46, that when personal estate is actually given or settled to the separate use of a married woman, she may dispose of it as a feme sole: 2. Roper on Husband and Wife, 185.; *Peacock* v. *Monck*, 2. Vesey, Sen. 197. When the wife has an absolute interest, qualified only during the coverture on account of her condition as a married woman, since she has in such case a complete dominion over the property as if she were a single woman, the court will order it either to be paid or transferred to herself or to her husband, with her assent: 2. Roper, 225. If she file a bill praying that it may be transferred to the husband for his own use and benefit on his own personal security, the court will so order it: *Chesslyn* v. *Smith*, 8. Vesey, 185. If there be a trust for the separate use of a feme covert, with a power to her to appoint, but without any particular form of appointment, it appears that equity will so far consider her to have the absolute control over the subject of the trust as to uphold and enforce a disposition of it by her in any form in which she intimates an intention to that effect: Clancy, 294.

In Clancy c. 7. and in 1. Hov. notes to Vesey, p. 49., the cases are pretty well collected. Indeed, the wife's right to do what she pleases with her separate property is now so well established, that a reference to authorities is an act of supererogation. The only questions in such cases are: 1st. Whether she has by her deed an uncontrolled power and absolute right of property; and 2. Whether a settlement shall be first made. As to the first point. The perusal of the deed of settlement shews her right clearly absolute. The words are stronger perhaps than they are in any of the reported cases. On the second point, she may waive her equity to have a settlement; and

she has done so in this case, by the appointment and by the bill: *Sturges* v. *Corp,* 13. Vesey, Jr. 190. A reference to a master therefore to ascertain such assent is here unnecessary; and as the wants of the family are urgent, we pray an immediate decree to pay over, according to the terms of the appointment—the balance being ascertained and admitted.

*M. R. L. Schieffelin* for the defendants.

I. By the answer of the defendants, trustees of Elizabeth Whitall, it appears that her husband James D. W. Whitall, is in embarrassed circumstances; and insolvent, and it appears by *Udall* v. *Kenny*, 3. Cowen R. 590., that even without an ante-nuptial settlement in trust, where the husband has shewn incapacity to manage his concerns or a disposition to squander his wife's property, the court will direct the interest to be paid to her or to her trustee for her benefit. The only way in which she can herself dispose of it is, by consent in court or out of it, on an adequate provision being made for her: *Same case.* Where the husband applies to a court of equity for the control of his wife's property, this court will protect her interests and make such a decree as is most for her benefit: *Fabre and wife* v. *Colden*, 1. Paige's C. R. 166. And though in this case now before the vice-chancellor, the bill is filed by both husband and wife, yet it is to be regarded as the sole application of the husband, she being under his control; and as to this doctrine see 1. Paige's C. R. p. 488., where a wife of a husband, addicted to intemperance, was refused as a guardian, " she being under his control." The rule that a feme covert is to be considered as a feme sole, as to her separate property, does not extend to transactions with her husband: 2. Vesey, 498. A wife is not capable of changing the nature of her estate, because she is under coverture: 2. *Atkyn's* R. 452. She cannot be deemed to have waived her equity by the bill, because a bill by a husband and wife, in her right, is the bill of the husband: 2. Vesey, 666. Husband suing for the wife's property must make a settlement: 2. Vesey, 562. The whole of the wife's fortune, though she were present and consenting,

1833.

WHITALL
*v.*
CLARK.

1833.

WHITALL
v.
CLARK.

not paid to the husband, but only a part of it, the remainder being settled on the wife and family : 2. Vesey, 579. 672. In this case, the answer of the trustees alleges the insolvency of the husband ; and this forms a stronger reason for a settlement on the wife, to prevent her from future want after being possessed of a fortune of, over thirteen thousand dollars. The said answer also states the amount of advances, made to the husband by the assent of the wife, and without such express assent ; and claims a deduction of the amount of such advances, with interest, from whatever monies the court may order to be paid over to the husband or any new trustee. It also claims their allowances of commissions, costs and charges, and consents that a new trustee may be appointed, and the funds in their hands paid over.

As no fraud or improper conduct is alleged against the trustees, they are entitled to all of the above items ; and they pray that, if a decree be granted, directing the payment of those funds, they may be authorized to deduct thereout their usual commissions, advances and interests, and their costs to be taxed. At the same time, although it would be a relief to them to be discharged from a trust of such continued trouble and pains, they deem it their duty to state, that the power and discretion of the court, so usually exercised for the protection of the property of infants, femes covert, and other persons under disability, could not be displayed to more benificent purposes, than preserving, at least, a portion of the funds in question in this cause, by way of settlement for the wife and her family or by being paid into court to be invested for her and their benefit. As to the construction of the ante-nuptial agreement, and whether it authorises the feme covert to direct a conveyance to her husband, now that she is under his direction and control, the trustees submit themselves to the court, only premising that it was considered and intended by the parties, at the time of its execution, as an effectual preservative of her property, not only from the claims of her husband or his creditors, but even from the possible controlled change of opinion and desires of the feme covert herself.

Mr. *J. Anthon* in reply.

The learned counsel for the defendants has entirely mis-conceived the well settled law on this subject, which pro-ceeds on the principle that where the wife holds personal property for her own use as a feme sole, she must have it with all its privileges and incidents, one of which is the ab-solute *jusdisponendi*: 2. Roper, 185. The property being her own, she may do with it what any other owner may and if they are laboring under family difficulties and embarrass-ments merely, it may be the very case in which the welfare of herself, her husband and children may most peremptorily demand its devotion, to the payment of debts and the set-ting the head of the family forth again in the world for the common benefit of the wife and children: 2. Roper, 232. The cases cited by the defendant's counsel are inapplicable. The only case from which he directly draws any position, viz: *Udall* v. *Kenny*, 3. Cow. 590. is totally dissimilar to this case. 1. The wife was an infant. 2. The husband had appointed her interest, she joining in the assignment. 3. This assignment was of a fraudulent character, and her act void. 4. The wife applied to rescind it, and have her equity. 5. The husband, a drunkard, &c.

There are other features which brought this case under the received principle that the wife has an equity to a settle-ment which she has a right to waive or to insist upon ; and here she insisted on it. The other cases cited need no com-ment, the wife is not hostile in this case, but assenting, and anxious to use her property for the common benefit of her husband and herself? It is not a case for a settlement, the wife is of full age, and does not ask it. Such interferenc would not be a kindness to the family—she has confidence in her husband and chooses that he shall have her property with her person. It is true there is an allegation of the hus-band's insolvency in the answer, but it is equally true it is unfounded, and whether true or false it does not affect the case to the disadvantage of complainant's application. If there are embarrassments of a pecuniary character, then the money is the more needed. A reference to a master is only made to ascertain whether the wife acted without co-

ercion, but when she joins in the bill this is unnecessary, the court makes the same decree upon the bill as in the case of any other person *sui juris : Essex* v. *Atkins*, 14. Ves. 542. ; *Allen* v. *Passworth*, 1. Ves. Senr. 163. We therefore pray a decree that the trustees pay over &c., pursuant to the appointment ; and we have no objection to the allowances they pray for, which we consider just, viz. 1. The money advanced with wife's assent. 2. The money advanced on the strength of this fund, without her assent. 3. Their commissions ; and 4. Their costs and charges.

*April* 21.      THE VICE CHANCELLOR :—I am asked to give effect to an appointment by a married woman, in favour of her husband, executed by her under a power contained in a marriage settlement. The only question is, whether the court is bound to carry the appointment into effect, by decreeing the money to be made over to the husband ? There was formerly some doubt in the case.

When such cases first came before Lord Thurlow, he hesitated ; but upon an examination of authorities, he decided that although the deed might be direct to the husband, yet still the court would have to give effect to it. And since his time, such a deed has been declared to be valid : unless undue influence could appear. All the court can do is to watch such an act with jealousy ; and therefore, the utmost I can do is to throw around the transaction a scrutinizing guard, to ascertain if the deed has been fairly and voluntarily executed. Let the decree direct a reference to a master to examine the wife apart from the husband to ascertain, under what circumstances she executed the deed ; as also whether she still consents to its being carried into effect. The master will take care to inform the wife of her rights and to notify her that she may still dissent and the court will protect them if she requires it. If the master finds that the deed was duly executed and that the wife freely consents, then he may proceed to state an account of the amount in the hands of the trustees and upon the coming in and confirmation of the master's report the decree may be that the trustees pay over the monies to the husband, after deducting the charges and claims set up by them.

*N.* The following was the form of the decree, as settled by the court.

"It is ordered, adjudged and decreed, that it be referred to "Frederick De Peyster, Esquire, one of the masters of this "Court, to take proof as to the due execution of the deed or "instrument of appointment mentioned in the pleadings in "this cause as having been executed by the said Elizabeth "Whitall (late Elizabeth Mc. Kie) in favour of her husband, "James D. W. Whitall; and whether at the time of execut-"ing the same, she was of full age and not under any restraint; "and that the said master ascertain, upon a private examina-"tion of the said Elizabeth apart from her said Husband, whe-"ther she executed the said instrument of appointment with-"out any fear, threats or compulsion of her said husband, "and whether she the said Elizabeth is still willing and freely "consents that the money, in the hands of the defendants, as "her trustees, be paid over to her said husband according to "the said instrument. The said master first explaining to "her, the said Elizabeth, the right which she has under and "and by virtue of the ante-nuptial agreement to have the said "fund remain in the hands of trustees or invested by order of "this Court for her the said Elizabeth's sole and separate use. "And it is further ordered, adjudged and decreed, that if the "said master shall find the said deed of appointment to be "well executed and that she the said Elizabeth consents as "aforesaid, that then he proceed to take and state an account "between the said Elizabeth and the said defendants of the "trust fund in the hands of the said defendants; and that the "said master, in taking such account, make all proper allow-"ances to the said defendants for their legal commissions and "for the sums advanced by them to the said Elizabeth and "to her said husband out of or upon the credit of the said "fund. And upon the coming in and confirmation of the said "report, the said defendants pay to the said James D. W. "Whitall on his own receipt such balance as shall be found "due as aforesaid to the said Elizabeth, less the amount of "the costs of this suit as hereinafter mentioned. And upon "the refusal so to do that execution issue therefor. And it "is further ordered, adjudged and decreed that the said de-"fendants be, upon payment of the same to the said James

" D. W. Whitall, discharged from their trust in the premises.
" And it is further ordered, adjudged and decreed, that out
" of the said fund, the costs and charges of the respective so-
" licitors for the complainants and defendants to be taxed be
" first paid by the said defendants."