BUNCE and wife *vs.* VANDER GRIFT and others.

Where a feme sole takes out letters testamentary as an executrix, and after-wards marries, it is not necessary for her husband to file a written consent with the surrogate, to render him liable for her acts as such executrix. The provision of the revised statutes which requires the written consent of the husband, to render him jointly liable with his wife for her acts as executrix, only applies to cases where she is a feme covert when she applies for let-ters testamentary.

The husband who marries an executrix after she has taken out letters testa-mentary, is jointly liable with her for her acts, done as executrix, after as well as before the marriage. And he may be sued with her during their joint lives; and if he dies first, his assets will continue chargeable in equi-ty, and she will also be liable after the death of her husband for moneys which came to the hands of either, during her coverture, by virtue of the trust.

A feme covert executrix or trustee may convey the trust property, under a power given to her for that purpose, without the consent of her husband, and may apply the proceeds of the sale to the purposes directed by the trust. And the husband cannot compel her to sell and convey the property contrary to her own will or judgment, as she must acknowledge the con-veyance to have been executed voluntarily, and without fear or compul-sion, as in other cases.

Where real estate is directed to be sold under a power, and to be distributed as personalty, if the person entitled to the proceeds dies before the execu-tion of the power, such proceeds are to be distributed as the personal es-tate of the decedent, in the same manner as if the property had been sold before his death.

THIS was an appeal from the decision of a vice chancel- August 6. lor denying an application for the dissolution of an injunc-tion. The bill was filed by Bunce and wife, she being one of the children of J. F. Mason, deceased, for the partition of a lot in the city of New-York, and to restrain the de-fendants Gundrey and his wife, or either of them, from proceeding to sell the premises by virtue of a power of sale contained in the will of J. F. Mason. The testator died in August, 1832, seized in fee of the premises, leav-ing Mrs. Bunce and five other children his only heirs at law ; one of whom died previous to the commencement of this suit without issue. The testator, by his will, gave to his wife the use and income of all his property, so long as

she remained his widow, for the support of herself and her children.   After her death, or re-marriage, he ordered the property to be sold by his executors, either at public auction or otherwise, giving them full power and authority jointly or severally to sell and convey the same.   The money arising from the sale he gave to his six children in equal shares, to be paid to them respectively as they arrived at full age ; and if any of them died under age without issue, his or her share was given over to the survivors. His wife was appointed executrix and C. Millar and J. Bloodgood executors of the will ; but by a subsequent codicil, the appointment of Bloodgood was revoked, and the testator thereby appointed his wife and Millar to execute the will, and conferred upon them all the powers which by the original will were given to the executors. Millar did not assume the trust, and letters testamentary were granted to the executrix only.   About a year and a half after the death of the testator, she intermarried with the defendant Gundrey, who, as the bill alleged, had from the time of such marriage assumed the entire control of the premises without any interference on her part, and had leased the same and received the rents and profits thereof without consulting Bunce and wife.   The complainants also alleged in the bill, that Gundrey and wife claimed the right to sell the premises under the power contained in the will, and that the premises had been advertised for sale without consulting the complainants ; and that Gundrey was improvident in his affairs and loose and intemperate in his habits, and that he and his wife were in such precarious circumstances as not to afford adequate security for the due and perfect administration of the estate of the decedent.   The answer of Gundrey and wife denied the allegation in the bill, that he was loose and intemperate in his habits, or that he and his wife were in such precarious circumstances as to render it unsafe for her to execute the trust.   They also denied that they advertised the premises for sale without consulting with Bunce ; but on the contrary, they alleged that the time of sale was fixed upon according to his own recommendation.

*T. S. Brady,* for the appellants,

*E. A. Willet,* for the respondents.

THE CHANCELLOR. The only allegations in the complainants' bill which could have justified the issuing of an injunction in this cause are fully denied, not only by the answer of the appellants, but also by the answers of the other defendants; who have a common interest with the complainants in the proceeds of the real estate of which the testator died seized. For the purpose of disposing of the question arising on this appeal, therefore, I must consider it as true that the executrix and her husband were proceeding in perfect good faith to sell the real estate, for the purpose of dividing the proceeds thereof among the several persons entitled thereto, as directed by the testator in his will.

The objection that Gundrey has not filed a consent in writing with the surrogate to be jointly liable with his wife for her acts as executrix, is not well taken. The fourth section of the article of the revised statutes relative to the granting of letters testamentary, (2 *R. S.* 69,) is only applicable to the case of an executrix who is a feme covert at the time she applies for such letters. Where she is a feme sole at the time, she assumes the trust and takes out letters testamentary, the husband who marries her afterwards is liable for her acts, both before and after the marriage. So long as they both live, he may be sued jointly with her for a devastavit committed by either; and even if he dies before her, his assets are chargeable in equity. She also is liable after the termination of the coverture for moneys which came either to her hands or the hands of the husband, in virtue of the trust. (*Adair* v. *Shaw,* 1 *Sch. & Lef. Rep.* 243. *Bellew* v. *Scott,* 1 *Strange's Rep.* 440.) Upon a sale of real estate by a feme covert under a power, either as executrix or otherwise, she may convey without the consent of her husband and apply the moneys as directed by the power. But she cannot be coerced by him

to execute the deed, as she is required to acknowledge it as her voluntary act, upon a private examination, as in other cases. (1 *R. S.* 735, § 110, 117.) There is no valid reason, therefore, for depriving the other defendants of the benefit of the power granted to the executrix by the will, and subjecting this real estate to the extra expense of a sale under a decree in partition.

The legal title, it is true, is vested in the complainants and defendants jointly, but not in the precise proportions stated in the bill. Upon the death of the testator, the remainder in fee, after the re-marriage of the widow, descended upon the six children ; subject to her right of dower therein, and also subject to the execution of the power of sale as directed by the testator. But the legal title in the share of the one that died did not immediately descend and vest in the remaining five so as to give each one undivided fifth of the premises, as stated in the bill. On the contrary, the mother took a life estate in that one sixth of the premises under the sixth section of the chapter of the revised statutes relative to the title to real property by descent, as amended by the act of 1830. (1 *R. S.* 752, § 6, *of 2d ed.*) In equity, however, this real estate must be considered as converted into personalty for the purposes of the will from the time of the re-marriage of the widow. The beneficial interests of the several parties in the premises, are for this reason the same as if the land had in fact been converted into personal property at that time. The rights to the beneficial interest in the share of the deceased child, therefore, depend upon the question whether he died before or after he arrived at the age of twenty-one. If he died under age, then his share is to be equally divided between the five surviving brothers and sisters, under the limitation in the will. But if he was of full age at the time of the happening of that event, then the beneficial interest in the one sixth of the proceeds of the sale which was to be made under the power, belonged to him absolutely ; and must be distributed as personal estate, between his mother and his five surviving brothers and sisters equal-

ly.   (2 *R. S.* 96, § 75, *sub.* 6.   *Leigh & Dalz. Eq. Conv.* 6, 91.)

If the answers of the defendants in this case responsive to the complainants' bill are true, there was no foundation for an application to this court either for an injunction, or for a partition of this estate which the executrix was proceeding in good faith to sell and distribute, in the manner in which the testator had himself directed it to be done ; and the bill, so far as it seeks either an injunction or partition, will be dismissed at the hearing, unless an entirely different case should be made out by the proofs in the cause. For this reason, I think the decision of the vice chancellor in refusing to dissolve the injunction was erroneous. It must therefore be reversed, with the costs upon this appeal ; and the injunction must be dissolved. The costs of the application to the vice chancellor must take the usual course and abide the event ; as it is barely possible that the proofs to be taken in the cause may so far contradict the answers as to show that it was a proper case for equitable interference.