## Woodruff *vs.* Cox.

### *In the matter of the estate of* ABRAHAM H. VAN WYCK, *deceased.*

IF, after letters testamentary granted to a feme sole executrix, she shall marry, her husband is liable for her acts before and after marriage, and they may be sued jointly. It is not necessary, in order to make the husband liable, that he should file a consent with the Surrogate; that is requisite only when the executrix is a feme covert at the time she receives letters. Marriage after letters granted is as effectual a consent as a written consent, under the statute after marriage, before letters granted; and in either case, the husband and wife are jointly responsible, and liable to account in the Surrogate's Court.

The power of the husband of a married woman executrix is substantially that of an executor. His wife cannot act without his concurrence, and he has the power of disposition over the estate.

In all proceedings relative to the estate, either the party moving or the executrix may set up the joint liability of the executrix and her husband; and the husband will then be cited jointly with his wife, to abide the orders of the Court in the due administration of the estate.

J. C. ALBERTSON, *for Petitioner.*
W. SILLIMAN, *for the Executrix.*

THE SURROGATE. The executrix having, on the application of an alleged creditor, been required to show cause why his claim should not be paid, appeared and averred that since the issuing of the letters testamentary she had màrried; and her husband not having been made a party to the proceeding, she insisted the application should be dismissed, with costs.

The statute prescribes that no married woman shall be entitled to letters testamentary, unless her husband consent thereto, by a writing to be filed with the Surrogate; and that, by giving such consent, he shall be deemed respon-

sible for her acts jointly with her. (2 *R. S.*, 3*d ed.*, *p.* 134, § 5.) The object of this provision was to determine a point much discussed, " the law on the question of a married woman being entitled to letters, without the consent of her husband," being " very unsettled." (3 *R. S.*, 2*d ed.*, *p.* 635 ; *Revisers's Notes ; Wentworth*, 377.) This section, therefore, declares that letters shall not issue to a married woman without the consent of her husband.

There is another class of cases beyond the provisions of this section : that is, where a woman marries after being appointed an executrix. In that case the Surrogate, on the application of any person interested, may revoke the appointment. (*Laws* 1837, *Ch.* 460, § 34.)

There never was any doubt that when letters have been granted to a feme sole, and she afterwards marries, her husband is liable for her acts before and after marriage, and they may be sued jointly at law or in equity for a devastavit committed by either. (*Bunce* vs. *Vander Grift*, 8 *Paige*, 39.) It is not necessary, to make the husband liable, that he should file a consent with the Surrogate. That provision of the statute is applicable only when the executrix is a feme covert at the time she receives letters. By the voluntary act of marriage, the husband effectually consents to become liable for his wife's acts, and assumes the responsibilities growing out of her position as executrix, when she already occupied that position at the time of marriage. Marriage in such a case expresses a consent quite as valid as a written consent filed under the provision of the statute referred to.

When, then, by a consent pursuant to the statute, or by having married a person already appointed executrix, the husband becomes liable for the acts of his wife jointly with her, is he liable to account in the Surrogate's Court?

At common law and in equity, in an action against a married woman executrix, or in an action by her, the husband must be joined. (*Com. Dig.*, *Adm.* [*D*], *Mitf. Pl.* 30 ; 2 *Atk.*, 213.) But by the canon law there was no

distinction in this respect between women married and unmarried; and therefore in the ecclesiastical courts the wife may sue and be sued alone. ( *Went. Off. Ex.*, 375.) Still in the spiritual courts the husband of a feme covert, executrix, was amenable to authority; and in one old case it was held that if a woman, executrix, marries, and her husband wastes the goods, and she dies, though there was no remedy against him at law, there was in the ecclesiastical court, where he could be compelled to make proper execution; and prohibition prayed for against the Court was denied. (1 *Rolle's Abridgment*, 919.)

The power of the husband of a feme covert, executrix, is substantially that of an executor. She cannot act without his concurrence, ( *Went.*, 380 ; 5 *Co.*, 27, 6 ; 1 *Sid.*, 31, 188 ; 6 *Mod.*, 93); and he has the power of disposition over the estate. (2 *W. Bl.*, 801 ; 1 *Roper, Husb. and Wife*, 188.) The wife, says Powell in his notes to Swinburne, cannot be executrix without her husband's assent; for if she might, "then he would be *executor* against his will." (*Swinburne*, 417, 418 ; 4 *Burn, Ecc. L.*, *p.* 155; *Toller*, 241.) Toller says, if he assent, " he shall have the *execution* of the will ;" and Wentworth,—" If a married woman be an executrix, or administratrix, the husband has a joint interest with her in the effects of the deceased, *such as devolves the whole administration upon him*, and enables him to act in it to all purposes, with or without her assent." ( *Went.*, 199, 375; *Williams on Ex.*, 190, 788, 825.) If the testator owed the husband, he could, at common law, retain for his debt; and on the other hand, if he owed the testator, the debt was released. In all these respects, during the life of the wife the husband was substantially the executor, by operation of law, though not so named in the will.

The effect of marriage after letters granted is the same as the grant of letters after marriage with the consent of the husband—that is, it makes the husband jointly responsible with his wife. He is, in most respects, a joint or coexecutor. At law he has all the substantial rights of an

executor, and he is liable as an executor; and I cannot think, when liable in all other tribunals, there is any sound reason why he should be exempt from responsibility as executor in . the Surrogate's Court, where such matters are peculiarly cognizable. It would be most singular, if possessing the powers of an executor, he could here be held to none of its duties. Suppose he commit a devastavit, against the will of the executrix, could she be punished by process of attachment? Suppose he obtain possession of the assets, can she be ordered or compelled to distribute when she has not the power? Or suppose, on accounting, a decree for payment be made against her solely, what effectual remedy is there for its enforcement by execution? When the statute decrees that the effect of the consent filed with the Surrogate shall be to make the husband jointly responsible, no exception is made—no particular tribunals are named—but the language is general and absolute—" He shall be deemed responsible for her acts *jointly* with her." As his liability is *joint*, of necessity wherever, by virtue of her office, any court has jurisdiction over her, the same authority obtains over him. This must be conceded in cases where a consent is filed under the statute; and, as the effect of marriage after letters issued is equivalent to a consent, the same rule must be applied in the latter instance. Either the creditor or the wife may insist upon its application, for the protection of their rights and interests; and the executrix having claimed the benefit of it in the present instance, the creditor must proceed against her and her husband jointly.