## JOHN CADWALLADER, ET AL. *v.* EVANS & SWIFT.

1. When a court has jurisdiction of the person and of the subject-matter, the mere form of petition addressing the court as sitting in chancery, or holding pleas at law, can not derogate from the validity of any order or decree rendered therein; any technical language found at the commencement or conclusion of such petition, by which the court is supposed to possess other and further jurisdiction, may well be rejected as unnecessary and informal matter of surplusage.

2. The court of common pleas had jurisdiction of an action brought in the year 1840, under the administration act of March 12, 1831, to subject an intestate's real estate to the payment of his debts.

3. Any act of the court of common pleas, either in adjudicating upon matters submitted, or in rendering their decree, however erroneous or informal, will not · affect the validity of their judgment, unless reversed by proper proceedings in error or appeal.

4. Where a petition was filed by an administrator to sell lands, under the administration act of 1831, and process was the same day issued *returnable forthwith*, and returned the next day "served," and a guardian *ad litem* for the minor heirs was thereupon appointed, who accepted his appointment, and filed his answer the same day, and thereupon on the next day an order of sale was granted, as prayed in the petition, no collateral inquiry will be permitted to impeach the validity of such proceedings.

5. Where a *feme sole* is coadministratrix with others, and afterward marries, her power is determined; but when she is sole administratrix, her husband becomes, by the marriage, jointly interested with her in the trust.

6. It has long been the policy of our courts to uphold judicial sales, and in this general description, we include those made by trustees, administrators and sheriffs, whether upon a decree, an order, or an execution. No technical irregularities are permitted to deprive the purchaser of the right 'he has acquired. There must be not mere informalities, however gross, or error however apparent, but a palpable defect of power in the court, before his claim can be defeated.

GENERAL TERM.—Proceeding in error to reverse a judgment rendered for the defendants below by Gholson, J., at special term, June, A. D. 1857. The plaintiffs brought their action, as heirs of David B. Bassett, deceased, to recover the possession of an undivided half of certain real estate on the north side of Ninth street, between Main and Sycamore

streets, and of an undivided third of certain leasehold premises on the the north-west corner of Ninth and Sycamore streets.

From the record, it appears that the statement of the plaintiff's claim is briefly this. They are the heirs-at-law of David B. Bassett, deceased, who died intestate in 1838. At his death, he was the owner of the property now sought to be recovered; his estate, however, was insolvent, and his administrators having obtained, it is alleged, the proper authority from the court of common pleas of Hamilton County, sold the premises in controversy, and having made return of their proceedings, the same were approved by the court, as required by the statute, and a deed ordered to be made to the purchasers. The deed was made, and the present defendants, through intermediate conveyances, claim the title.

It was insisted that the proceedings had before the court of common pleas did not confer any power upon the administrators to sell, and the order or decree entered therein, was therefore void.

It was also claimed that one of the administrators did not join in the application to sell the intestate's lands; and further that there was no sufficient advertisement made of the time and place of sale.

These several questions were passed upon by the judge who tried the cause, who held that the plaintiffs had shown no right to recover; thereby affirming the validity of the administrators' right to sell, as well as of the sale itself.

On examining the evidence, it appears that the administrators of Bassett, on the 17th of June, 1840, filed their petition for leave to sell certain real estate, which included the property now in litigation, making the heirs of the intestate parties, and also John T. Bassett, and Luke Kendall, who were described, the latter as owning the one-half of the first described lot as partnership property, and both as each owning one third of the leasehold estate, as partnership property with the deceased at the time of his

death. The petition set forth that the intestate, as one of the firm of John T. Bassett & Co., owed a large sum of money; that his personal estate was exhausted, and the partnership effects also, and that it was accordingly necessary to sell so much of the real estate as might be sufficient to discharge the debts of the intestate. It was further alleged that the title to the property was held in the partnership name; and that John T. Bassett was wholly insolvent, and unable to contribute any thing to the payment of said debts.

A subpena was issued on the day that the petition was filed, requiring the defendants to appear forthwith, the court then being in session, and to answer to the claim of the administrators. It was served, on the 18th, by the sheriff, on all the defendants, but John T. Bassett.

On the same day, Luke Kendall filed his answer admitting the facts averred in the petition, and assenting to a sale of his portion of the property. At the same time, David Mills was appointed guardian *ad litem*, of the heirs of David B. Bassett, they being all minors. He appeared, consented to act, and was thereupon ruled to answer in one day, and on the same day the formal answer, in such cases usually made by a guardian *ad litem*, was filed.

On the 19th of June, the court granted the prayer of the petition, and ordered the undivided one-third part of the leasehold estate, described in the pleadings in this case, and the joint interest of the decedent and Kendall in the lot held in fee, to be appraised and sold. On the same day, an order of appraisement issued; on the 22d, the appraisers were sworn, and having made and returned their appraisement, it was approved and confirmed by the court, who directed an order for the sale of the appraised property. This order issued on the 28th of July, and at the November term in the same year, a report of the sales was regularly returned, which, after due examination, was found by the court to have been properly made: the several sales were

thereupon confirmed, and the administrators directed to make deeds to the purchasers.

*Lee & Fisher*, for plaintiffs in error.

*W. B. Probasco*, for defendants in error.

STORER, J., delivered the opinion of the court.

The plaintiffs in error claim that there was no valid order for the sale, under which defendants derive title, because, say they, the petition filed by the administrators assumes to be a bill in equity, addressed to the court of common pleas, on their chancery side, and as the probate jurisdiction conferred on that tribunal was special only, they could not exercise it in the mode sought by the administrators. At the time those proceedings were commenced, the law of 1831, defining the duties of executors and administrators, was in force. By section 31, it was provided, "That when the executor or administrator shall apply to the court under this act, for authority to sell the real estate of his testator or intestate, the application shall be by petition, to which the widow, and the lawful heir or heirs, or the person or persons having the next estate of inheritance of the testator or intestate, if known to such administrator or executor, shall be made defendant thereto; and the defendants shall be served with process or otherwise notified of the pendency of such petition in the manner prescribed in the 'Act directing the mode of proceeding in chancery, etc.'"

It will be perceived, no particular form of proceeding is prescribed, the substance only to be embodied is set forth; hence, it is immaterial what the petition, considered as a part of the pleadings in the case, may be denominated; whether it is artificially or inartificially framed, or the court to whom it is addressed, are described as sitting in chancery, or holding pleas at law. If the tribunal itself, to which the application is made, has the power to grant the prayer of the petitioners, it can not derogate from the

validity of any order or decree it may render, if any technical language by which the same court is supposed to possess other and further jurisdiction, is found, in the commencement or conclusion of the petition. We may well reject every such unnecessary or informal statement or surplusage, and find in the proceedings nevertheless all that is required to be averred by the statutes. " *Utile per inutile non vitiatur.*" 2 Tidd's Practice, 827.

There was no defect of jurisdiction in the common pleas, as a court of probate; it was expressly given by section 5 of article 3, of the old constitution; and it is not unimportant to notice that 'the language of the section 3 which conferred common law and chancery jurisdiction, is not more definite or intelligible. The subject-matter, involved in this controversy, was clearly then within the jurisdiction of the common pleas, and whenever its process was served upon the defendants, named in the proceeding to subject the property to sale, jurisdiction over the person also attached.

This was the express provision of the practice act then in force regulating proceedings at law, volume 29, 117; Swan, 649, and so also in chancery, Ibid, 82; Swan, 698. See also 19 Ohio, 238, *Daniels* v. *Stevens.*

If, then, the jurisdiction existed over the property and the person, the question is directly presented, and it seems to us it covers all the objections urged by the plaintiffs in error,—can any subsequent act of the court, either in adjudicating upon matters submitted, or in rendering their decree, however erroneous or informal, affect the validity of their judgment?

This is no novel question; it has been often discussed in our own courts, and decided in every conceivable form.

In 3 Ohio, 561, *Ludlow's heirs* v. *Johnson*, it was said by Judge Hitchcock: "If the court of common pleas, acting as a court of probate, or orphan's court, had jurisdiction, an end is put to the question; the evidence ought to have been received. We can not inquire collaterally whether that

jurisdiction was properly exercised. The order may have been unadvisedly or erroneously made, but the purchaser has innocently acquired rights of which he can not be divested, so long as it remains unreversed."

This is affirmed in very many subsequent cases, and has become, by the universal assent of the profession, the law of the State. The rules applicable to ordinary judgments, at law or in equity, where the tribunal in which they are rendered has complete jurisdiction, govern also the order of a probate court. All the implications of the one case may be drawn in the other. The proceedings, in all cases, are supposed to be " *bene et rite acta*," until the final adjudication is set aside, or reversed; 7 Ohio, part 2, 138, *Ewing* v. *Hollister*.

Whether, then, the order was granted to the administrators of Bassett, without giving a day to the guardian, *ad litem*, to traverse the petition, or whether it was granted before a guardian was appointed, and appeared for the minor defendants, it is equally well settled that the judgment of the court is valid until it is directly adjudicated, by reversal, before an appellate or superior tribunal. No collateral inquiry will be permitted as to the mode pursued by the court rendering the decree. All parties are forever concluded while the decree stands.

Thus it was held in 3 Ohio, 355, *St. Clair's heirs* v. *Smith, et al.;* and in 7 Ohio, part 1, 198, *Ewing's lessee* v. *Higby;* that it was only error to decree against infants, when the court had obtained jurisdiction. And so when a judgment, or decree, is rendered against a married woman, it is good until reversed; 9 Ohio, 117, *Pillsbury, lessee,* v. *Dugan.* In these cases the error is one of fact only, and may be reached by a writ of error, *coram vobis;* 6 Ohio, 518, *Dows* v. *Harper.*

We may well conclude, therefore, that the order in controversy, was voidable only, if even that imputation can rest upon it.

Before we can decide that the judgment is void, we must

John Cadwallader, et al. *v.* Evans & Swift.

be satisfied that it was " *coram non judice.*" In order to establish such a proposition, no jurisdiction over the person, or the subject-matter, must have been acquired by the court, but as both were clearly obtained, in the proceeding before us, the plaintiffs' hypothesis is without foundation.

If we recur to the history of the proceedings by executors and administrators, to sell lands, we shall find that, in this county, the common pleas, when once the defendants were in court, acted in a summary manner, and without reference to their practice in other cases. Perhaps there is scarcely an exception where the order was not granted at the term when the petition was filed. The object to be accomplished was a speedy settlement of estates, and thus enable the administrator to accomplish that purpose within the period required by the statute. Hence, no delay was asked; and in the great majority of cases, none should be granted. There was always a sufficient guaranty for the faithful discharge of duty, in the bond required of the officer, and the constant supervision of the court, who, while they gave the power to sell, at last settled his accounts. Besides, the property could not be sacrificed, as it was first valued by commissioners appointed by the court. There could be no sale, unless at two-thirds the appraisement, and all the acts of the administrator, in executing the authority, were finally to be scrutinized and approved before the sale could be confirmed, or the purchaser obtain a title.

Errors and irregularities may, however, occur in carrying out this system, but we are not aware that injustice has ever been done, or reproach properly brought upon the courts, for their supposed precipitate action.

The plaintiffs further assume that another administrator, who was not joined in the petition, was alive, and ought to have been named. They also contend that on the subsequent marriage of Mrs. Bassett, her power, as administratrix of her deceased husband, was at an end.

As to the first objection, the proceedings show that prior to their commencement, Hunt, the coadministrator with Mrs.

Bassett, had resigned, and his resignation been accepted by the court. This was always permitted under the law of 1831, and is expressly authorized under the statute of 1840.

The second objection is attempted to be sustained by a quotation from Viner's Abridgement, Vol. 11, 375:

" Where one makes his *feme*, and another his executors, and dies, and his *feme* takes baron and the *feme* dies, the baron and the other executor shall not join."

This is good law, as the power expired with the death of the wife; there could be no survivorship to the husband. There is no doubt it has been held, where a *feme sole* is executrix or administratrix with one or more persons, and afterward marries, her power is determined. But when she is the only representative, her husband becomes, by his marriage, jointly interested with her in the trust; 7 Mass. 511, *Barber* v. *Bush.* See also 8 Paige, 37, *Bunce* v. *Vandergrift:* Until the law of 1840, Swan, 369, section 28, it never was supposed that the marriage of the *feme* administratrix determined the trust. Before that period, it was always permitted for the husband to join with his wife, and settle up the estate upon which she had administered. The proceedings were carried on in the name of both parties.

A *feme covert* may act as executrix, though her husband must join in every action proper to be brought. She may perform the trust, as well as execute any other power; Williams on Ex. and Adm'r, 129, 698.

In the present case, when the administratrix married, she was the sole trustee, and none of the exceptions referred to can therefore apply.

It is also said there was no publication made, as required by the statute, of the time and place of sale.

A sufficient answer to this objection is found in the confirmation of the sale by the court: we can not re-examine the proceedings they have pronounced to be regular, any more than we can decide whether they erred in decreeing the order of sale. The statute which required the sale to be

confirmed before a deed could be made to the purchaser, was passed for the express purpose of removing all doubts as to the necessity of proving, when a title derived from a judicial sale was questioned, any of the preparatory steps.

Before the cases of 15 Ohio, 441, *Lessee of Paine* v. *Mooreland;* and 17 Ohio, 409, *Lessee of Cochran's heirs* v. *Loring,* it had been held that failure to give notice, by publication, in cases of foreign attachment, was fatal to the jurisdiction of the court who had assumed it. The decision in these cases, however, settled the question, and declared that the jurisdiction attached, by the affidavit, issue, and service of the attachment. And such was the ruling of the Supreme Court of the United States, in 10 Peters, 460, *Voorhees* v. *Bank of the United States;* where the same question was made under the attachment law of Ohio.

On the same principle, it was held, in 3 Ohio, 107, *Allen's Lessee* v. *Parish,* overruling 1 Ohio, 27, *Patrick's Lessee* v. *Oosterout,* that a purchaser at a sheriff's sale depends upon the judgment, the levy and the deed, and that all other questions are between the parties to the judgment, and the officer; and the vendee at administrator's sale is equally protected; 7 Ohio, part 1, 203, *Ewing's Lessee* v. *Higby.* See also 9 Ohio, 19, *Stall* v. *Macalester.*

It was not required, then, before the statute, when the sale was made, and the deed delivered, without any supervision by the court of the administrator's or sheriff's proceedings, in a subsequent contest relative to the property, that the publication referred to should be proved.

We do not find, in any view we can take of this objection, that it can be sustained upon any principle known to our law, or which has hitherto governed the action of our courts. We suppose, however, that all these objections are removed if the court had jurisdiction to make the orders of sale and confirmation. These being granted, or found to exist, the purchaser must be protected. It has long been the policy of our courts to uphold judicial sales, and in this general description we include those made by trustees, administrators, or

38

sheriffs, whether upon a decree, an order, or an execution. No technical irregularities are permitted to deprive the purchaser of the right he has acquired. There must be, not mere informality, however gross, or error, however apparent, but a palpable defect of power in the court, before his claim can be defeated.

The security of titles requires this at the hands of every tribunal whose aid is invoked, in a case like the present, where nearly the full term of years has elapsed to complete a perfect right of possession, and the property has greatly increased in value. We must apply the strict rule to the party who seeks to set the sale aside, and look with favor upon the title of the purchaser.

On the whole case, the judgment at special term is affirmed.

Judgment affirmed.