WILLIAM ROSS, ADMINISTRATOR, WITH THE WILL ANNEXED, ETC., v. ANDREW ROBERTS AND OTHERS.

*Power of sale — if essential to scheme of will, not defeated by executor's refusal to act — Equitable conversion — when it takes effect.*

When a power of sale is given to executors, the exercise of which is essential to the carrying out of the scheme of the testator, if the executors refuse to qualify or act, the power in trust is not thereby defeated or lost.

In such case the duty devolves upon the court to appoint some suitable person to execute the power.

The rule of equitable conversion of real into personal, and personal into real estate, does not operate until the time arrives when the conversion is directed to take place.

When the testator leaves real estate, and directs that on the decease of his wife it be sold and the proceeds divided among his legatees, *held*, that the husband of a legatee who dies after the testator and before the widow, was entitled, on the death of the widow, to the legacy bequeathed to his wife.

APPEAL from a judgment, entered upon the order of a single judge, in a case tried without a jury.

The facts found are as follows: On the 24th day of January, 1859, James Roberts died, leaving him surviving, his wife and heirs-at-law, who are his legatees, all of whom but the wife are defendants. Before his death, and on or about the eighteenth day of July, he made his will as follows:

1st. I give and bequeath to my daughter Margaret Brown, one-tenth part of my whole estate, both real and personal, excepting $600, which is to be added to my daughters Mary and Jane's shares.

2d. I will and bequeath to my son Andrew, a sum equal to that given to my daughter Margaret.

3d. I will and bequeath to my son John, a sum equal to my daughter Margaret or Andrew's share, less by $2,050.

4th. I will and bequeath to my son Jacob, a sum equal to that of my daughter Margaret or son Andrew's share, less $1,350.

5th. I will and bequeath to my son Ira, a like sum equal to Margaret or Andrew's share, less by $419.

6th. I bequeath to my daughter Rachael Woolverton, or her heirs, a sum equal to Margaret or Andrew's share, less by $1,360.

7th. I bequeath to my daughter Clara Hazlett, a sum equal to Margaret or Andrew's share, less by $1,165.

8th. I give and bequeath to my daughter Jane, a sum equal to Margaret or Andrew's share, and $100 more.

9th. I will and bequeath to my daughter Mary, a sum equal to Margaret or Andrew's share, and $500 more.

10th. I will and bequeath to the heirs of my son Charles, a sum equal to the share of Margaret or Andrew, less by $6,570.

11th. I hereby order that my whole estate, both personal and real, shall remain in the possession and under the control of my wife Mary, who shall make use of so much of said estate as she may require for her comfort and support during her natural life; and the above named dowries are not to be paid until one year subsequent to the decease of myself and my wife Mary. My executors are hereby authorized to sell my real and personal estate, and to convert the same into money for division, within one year after the decease of myself and wife.

The sons John and Andrew were named executors.

Said will was duly admitted to probate; the wife went into possession of the property, and used and occupied it until her death in October, 1871. The value of said estate was estimated at $22,000.

Intermediate the death of the testator and that of the wife, the daughter Mary, in the ninth clause of the will named, intermarried with the defendant, Edgar Hawley, and afterward, in 1864, she died intestate, without issue, leaving her husband and brothers and sisters her surviving. The executors named in the will, before the commencement of this action, had ceased to act as such, having either refused to qualify or been removed.

Among other conclusions of law, the Special Term held and decided that the legacies and bequests mentioned in the will became and were vested in the legatees at the time of the death of the testator; that the defendant, Hawley, as survivor of his wife, Mary Hawley, was entitled to the legacy bequeathed to her by the ninth clause of the will, and that plaintiff should be appointed a trustee to sell the real property of the testator unsold.

From these conclusions of law, the defendant, Andrew Roberts, brought this appeal.

*B. W. & C. M. Woodward*, for the appellant.

*J. McGuire*, for the plaintiff, respondent.

*C. S. Baker*, for the defendant, Hawley, respondent.

JAMES, J.:

No objection was made on the argument to the findings of fact.

The question discussed, and the real question on the appeal, was the character of the estate or interest possessed by Mrs. Hawley at the time of her death, under the ninth clause of the will.

In the construction of wills, it is the duty of the court, if possible, to ascertain from the instrument itself, the intention of the testator, and then to give effect to such intention, unless in conflict with some rule or principle of law. In this case, the intention is so clearly expressed and transparent, that there is little cause for construction.

It *first* gives to each of his ten children, or their descendants, a money legacy, in the whole equal to the entirety of his estate which should be left at the death of his wife; *second*, to his wife for life, the possession and use of his entire estate, for her comfort and support, as she might require; *third*, suspends the payment of all legacies until one year after his death ; *fourth*, gives his executors a power of sale, authorizing them to convert his property into money for division, within one year after the decease of his wife ; *fifth*, names his sons, John and Andrew, executors.

Under this will no estate vested in the executors as such ; it gave them simply a power of sale. The widow took an estate in possession for life ; the remainder passed to the heirs of the testator, subject to the power of sale. On the death of Mary, after the testator and before the mother, her interest in remainder passed to her brothers and sisters.

The execution of the power must be held as intended to be absolute ; not otherwise could the scheme or intention of the testator be carried out; and, although there has been no sale as yet, there being no discretion vested in the executors, even though they have

refused to qualify, or been removed, the trust is not thereby defeated or lost; the legacies, on the death of the testator, became vested interests in the legatees, and, in the contingency arising in this case, the trust vested in this court, and the duty devolved upon it to appoint some person to execute it.[*]

It is most certain, the testator did not intend the parceling of the residuum of his estate among the legatees named; he desired it to be sold, *converted into money,* and distributed as directed. To allow such intention to be defeated by the neglect or refusal of the trustees named to act, would be unjust to the beneficiaries.

It is clearly manifest that the testator intended to stamp the character of personalty upon his estate to make whatever was left at the death of his wife, money; and it is claimed that, under the doctrine of equitable conversion, it became such on the death of the testator.[†]

It was urged that this rule of equitable conversion could not be invoked, because it did not begin to operate until after the death of the wife; that when the conversion of real estate is directed for particular purposes, it remained real estate until the time arrived for it to be converted as directed. This is doubtless so. It was said in *Savage* v. *Burnham,* [‡] that " the doctrine of equitable conversion, according to which real estate *is deemed to* be changed into personal, directed and provided for in a will, or other instrument, must be taken with the qualification that the change does not take place until the period arrives, or event occurs, when the conversion ought to be made. When that period arrived, the estate would be deemed to undergo the change directed by the will, whether actually sold or not." Therefore, at the time of the death of the daughter, Mary, the doctrine of equitable conversion could not be invoked, as the time had not arrived; consequently, her interest in remainder passed to her heirs-at-law, subject to the trust and power given by the will, to be divested, when the proper time arrived, by actual sale or equitable conversion. It was said, in *Moncrief* v. *Ross,* [§] " by the power of sale the land was equitably converted into money from the time the

[*] 3 R. S., 5th ed., p. 22, § 87.

[†] Marsh v. Wheeler, 2d Ed. Ch. R., 155, 159; Stagg v. Jackson, 1 Com., 206.

[‡] 17 N. Y., 561–569.                    [§] 50 N. Y., 436.

sale was directed to be made, and will be so regarded thereafter in equity, *for all purposes.* \* So that, although the wife of Hawley, at her death, held an estate in remainder in the land, which could not then be converted into personalty, neither by the doctrine. of equitable conversion or actual sale, her death, at that period, did not destroy the legacy or change its character. It was still a money legacy, to be distributed as her personal estate, in the same manner as if a sale or conversion had taken place before her death. †

In this view, it follows that the disposition made of the case by the Special Term was correct.

Judgment affirmed, with costs to the plaintiff and also to the defendant Hawley against the appellant Andrew Roberts, personally.

---

\* Bogert v. Hertell, 4 Hill, 492 ; Manice v. Manice, 43 N. Y., 303 ; White v. Howard, 46 id., 144.

‡ Bunce v. Grift, 8 Paige, 37 ; Jar. on Wills, 525 ; Wheldale v. Partridge, 5 Vesey, 388.