Ross v. Roberts.

---

Ross v. Roberts, appellant.

*Estate—vesting of — distinction between real and personal.*

A testator, by his will, gave to his wife the use of his real estate for life, and directed his executors, after her death to sell such estate and divide the amount among several persons named. M., one of the persons, married and died intermediate the death of testator and testator's widow, leaving her husband but no issue surviving. *Held,* that the interest of M. in the estate vested at the death of testator; that during the life of testator's widow, and before the sale, directed in the will, it continued an estate in remainder in the real estate which could not be converted into personalty by the doctrine of equitable conversion. But the gift to M. was nevertheless a money legacy, and the death of M. before the death of testator's widow and the sale did not change its character, and it was to be distributed in the same manner as personal estate and would go to M.'s husband as survivor.

APPEAL from a judgment at special term in an action for the construction of a will. The action was brought in Schuyler county by William Ross, as administrator, with the will annexed, of the estate of James Roberts, deceased, against Andrew Roberts and others. It was tried at the Schuyler special term in July, 1873, before Mr. Justice BALCOM, who found in substance these facts:

On the 24th day of January, 1859, James Roberts died, leaving him surviving his wife, and heirs at law as legatees, all of whom, but the wife, are defendants. Before his death, and on or about the 18th day of July, 1855, he made his will as follows:

" *First.* I give and bequeath to my daughter Margaret Brown, one-tenth part of my whole estate both real and personal, excepting

$600 of said estate, which is to be added to my daughters Mary and Jane's share.

*Second.* I will and bequeath to my son Andrew a sum equal to that given to my daughter Margaret.

*Thirdly.* I will and bequeath to my son John a sum equal to my daughter Margaret or Andrew's share, less by $2,050.

*Fourthly.* I will and bequeath to my son Jacob a sum equal to that of my daughter Margaret or son Andrew's share, less $1,350.

*Fifthly.* I will and bequeath to my son Ira a like sum equal to Margaret or Andrew's share, less by $419.

*Sixthly.* I bequeath to my daughter Rachael Woolverton or her heirs a sum equal to Margaret or Andrew's share, less by $1,360.

*Seventhly.* I bequeath to my daughter, Clara Hazlett, a sum equal to Margaret or Andrew's share, less by $1,165.

*Eighthly.* I give and bequeath to my daughter Jane, a sum equal to the share of Margaret or Andrew, and $100 more.

*Ninthly.* I will and bequeath to my daughter Mary, a sum equal to Margaret or Andrew's share, and $500 more.

*Tenthly.* I will and bequeath to the heirs of my son Charles a sum equal to the share of Margaret or Andrew, less by $6,570.

*Eleventh.* I hereby order that my whole estate, both personal and real, shall remain in the possession and under the control of my wife Mary, who shall also make use of so much of said estate as she may require for her comfort and support during her natural life ; and the above-named dowries are not to be paid until one year subsequent to the decease of myself and my wife Mary. My executors are hereby authorized to sell my real and personal estate, and to convert the same into money for division, within one year after the decease of myself and wife." The sons John and Andrew were named executors.

Said will was duly admitted to probate, the wife went into possession of the property, used and occupied it until her death, in October, 1871. The value of said estate was estimated at $22,000.

Intermediate the death of the testator and that of the wife, the daughter Mary, in the ninth clause of the will named, intermarried with the defendant, Edgar Hawley, and afterward, in 1864, she died intestate, without issue, leaving her husband and brothers and sisters her surviving. The executors named in the will, before the commencement of this action, had ceased to act as such, having either refused to qualify or been removed.

· Among other conclusions of law the special term held and decided that the legacies and bequests mentioned in the will became and were vested in the legatees at the time of the death of the testator; that the defendant Hawley, as survivor of his wife Mary Hawley, was entitled to the legacy bequeathed to her by the ninth clause of the will; and that plaintiff should be appointed as trustee to sell the real property of the testator unsold. From these conclusions of law, the defendant, Andrew Roberts, brought this appeal.

*B. W. & C. M. Woodward*, for appellant, cited *Hoyle* v. *Whiteside*, 1 N. Y. Sup. 301; *Bradley* v. *Amidon*, 10 Paige, 235; *Craig* v. *Craig*, 3 Barb. Ch. 77; *Vail* v. *Vail*, 4 Paige, 317, 328; *Nodine* v. *Greenfield*, 7 id. 548; *Doe* v. *Provoost*, 4 Johns. 61; *Doe* v. *Martin*, 4 Term R. 39; *Osbrey* v. *Bury*, 1 Ball & Beat. 53; Redf. on Wills, part 2, § 65, subd. 12, note; *McCarthy* v. *Deming*, 4 Lans. 440; *White* v. *Howard*, 46 N. Y. 144, 162; *Harris* v. *Clark*, 7 id. 242, 261; *Birdsall* v. *Hewlett*, 1 Paige, 34; *Matter of Saxton's estate*, 1 Tuck. 33.

*J. McGuire*, for plaintiff.

*Charles S. Baker* for defendant, Edgar Hawley.

*S. L. Rood*, for defendants, Mary Bost and others.

James, J. No objection was made, on the argument, to the finding of facts.

The question discussed, and the real question on the appeal, is the character of the estate or interest possessed by Mrs. Hawley at the time of her death, under the ninth clause of the will.

In the construction of wills, it is the duty of the court, if possible, to ascertain from the instrument itself, the intention of the testator, and then to give effect to such intention, unless in conflict with some rule or principle of law. In this case the intention is so clearly expressed and transparent that there is little cause for construction.

It *first* gives to each of his ten children, or their descendants, a money legacy, in the whole equal to the entire of his estate, which should be left at the death of his wife; *second*, to his wife for life, the possession and use of his entire estate for her comfort and sup-

port as she might require; *third*, suspends the payment of all legacies until one year after his death; *fourth*, gives his executors a power of sale, authorizing them to convert his property into money for division within one year after the decease of his wife; *fifth*, names his sons, John and Andrew, executors.

Under this will, no estate vested in the executors as such; it gave them simply a power of sale. The widow took an estate in possession for life; the remainder passed to the heirs of the testator, subject to the power of sale. On the death of Mary, after the testator, and before the mother, her interest in the remainder passed to her brothers and sisters.

The execution of the power must be held as intended to be absolute; not otherwise could the scheme or intention of the testator be carried out; and, although there has been no sale as yet, there being no discretion vested in the executors, even though they have refused to qualify, or been removed, the trust is not thereby defeated or lost; the legacies, on the death of testator, became vested interests in the legatees, and in the contingency arising in this case, the trust vested in this court, and the duty devolved upon it to appoint some person to execute it. 1 R. S. 730, § 68.

It is most certain the testator did not intend the parceling of the residuum of his estate among the legatees named; he desired it to be sold, converted into money, and distributed as directed. To allow such intention to be defeated by the neglect or refusal of the trustees named to act, would be unjust to the beneficiaries.

· It is clearly manifest that the testator intended to stamp the character of personalty upon his estate; to make whatever was left at the death of his wife, money; and it is claimed that under the doctrine of equitable conversion it became such on the death of the testator. *Marsh* v. *Wheeler*, 2 Edw. Ch. 155–159; *Stagg* v. *Jackson*, 1 N. Y. 206.

It was urged that this rule of equitable conversion could not be invoked, because it did not begin to operate until after the death of the wife; that when the conversion of real estate is directed for particular purposes, it remains real estate until the time arrives for it to be converted as directed. This is doubtless so. It was said in *Savage* v. *Burnham*, 17 N. Y. 561–569, that "the doctrine of equitable conversion, according to which real estate is deemed to be changed into personal, directed and provided for in a will or other instrument, must be taken with the qualification that the

change does not take place in theory until the period arrives or event occurs, when the conversion ought to be made. When that period arrives the estate will be deemed to undergo the change directed by the will, whether then actually sold or not." Therefore, at the time of the death of the daughter Mary the doctrine of equitable conversion could not be invoked, as the time had not arrived. Consequently her interest in remainder passed to her heirs at law, subject to the trust and power given by the will, to be divested, when the proper time arrived, by actual sale or equitable conversion. It was said in *Moncrief* v. *Ross*, 50 N. Y. 436, that by the power of sale " the land was equitably converted into money from the time the sale was directed to be made, and will be so regarded thereafter in equity *for all purposes*." *Bogert* v. *Hertell*, 4 Hill, 492; *Manice* v. *Manice*, 43 N. Y. 303; *White* v. *Howard*, 46 id. 144. So that, although the wife of Hawley, at her death, held an estate in remainder in the land, which could not then be converted into personalty, either by the doctrine of equitable conversion or actual sale, her death at that period did not destroy the legacy or change its character. It was still a money legacy, to be distributed as her personal estate, in the same manner as if a sale or conversion had taken place before her death. *Bunce* v. *Vandergrift*, 8 Paige, 37; Jarm. on Wills, 525; *Wheeldale* v. *Partridge*, 5 Ves. 388.

In this view it follows that the disposition made of the case by the special term was correct.

Judgment is affirmed, with costs to the plaintiff, and also to the defendant Hawley, against the appellant, Andrew Roberts, personally.

*Judgment affirmed.*