## SAVAGE *et al. v.* BURNHAM *et al.*

A testator devised his estate, real and personal, upon these trusts: 1. To sell the real estate after the death of his widow; 2. That she should, during her life, receive and take to her own use one-third part of the clear yearly rents and profits of the real estate; the residue of the rents and profits, until the sale of the real estate, to be deemed part of the personal estate and subject to the same dispositions; which were, 3. To apply the income to the maintenance and education of six sons and four daughters, named in the will, in equal shares, until the sons should attain the age of 21 years, and the daughters attain that age or be married, respectively; 4. To pay or transfer the principal in equal shares to the sons and daughters; the shares of the sons to become vested at 21, and then to be paid or transferred; the shares of the daughters to be vested in the trustees, the income to be paid to them after 21 or marriage, during life, and upon the death of each daughter leaving issue, her share to go to and rest in such issue. *Held*, a valid trust as to the real estate within the statute (1 *R. S.*, 728, § 55).

The trustees are to receive the rents and profits, paying one-third to the widow during life, and applying the residue to the use of the other beneficiaries as income. They are not to go to the principal of the trust fund until the period for selling the real estate arrives.

The trust provides for no unlawful accumulation, as it must cease on each share upon the sons and daughters attaining their majorities, respectively.

The law in respect to trusts of personal property has no application until the period arrives when the equitable conversion can take place under the terms of the trust. Until then, it is governed by the law of trusts in land.

The power of alienation, as to that part of the estate remaining in land, being suspended for the life of the widow, no further limitation, applying to the whole fund after the conversion of the land, is good which suspends the absolute ownership for more than a single additional life.

The contingent bequests of distinct shares as separate legacies, vesting in the sons upon their attaining the age of 21 years, respectively, and in the children of the daughters upon the deaths of their respective mothers, are valid.

But further limitations expressed in the will, by which the share of each son dying under 21, and daughter dying without issue, was to go to the surviving children upon the same contingency, as to each taker, as that on which an original share would have vested, are void, because suspending the absolute ownership of such accruing shares during one or more minorities in addition to the lives of the widow and the first taker.

Upon the circumstances of this case, *Held*, that the main intent of the testator, to secure the income of the daughters' shares to their separate use and

Savage *v.* Burnham.

the *principal* to their children, is preserved by supporting his primary.dispositions, although the ulterior limitations are defeated.

Although limitations, bad by statute, are enveloped in a single trust with others that are good, the trust may be supported for its valid purposes.

Two of the sons to whom shares were bequeathed contingently, by name, died before the testator, after arriving at the age of 21, unmarried and without issue; *Held,* that their interests lapsed and were undisposed of by the will.

The provision made for the widow under a trust vesting the entire legal estate in the trustees, is inconsistent with a right of dower, and she is bound to elect.

APPEAL from the Supreme Court. This was an amicable suit, brought to obtain a judicial construction of the last will and testament of Michael Burnham, deceased. It was tried at a special term, in the city of New-York, before Mr. Justice MITCHELL, in January, 1854, when these facts were proved : Michael Burnham, the testator, died January 19th, 1836, leaving his last will duly executed and in full force, bearing date June 15, 1825. He left him surviving, his widow Elizabeth Burnham, who died after the trial and before the decision in the court below, and the following sons, viz.: Charles, Michael, James M. and Thomas, and four daughters, who afterwards became, by marriage, Elizabeth Cockle, Harriet Russ, Ellen Savage and Anna A. Sherman. All the children surviving the testator were, at the time of his death, of full age, except Thomas, Ellen and Anna, who were then minors. Each of the daughters had children living at the time of the trial, all of whom were infants under the age of twenty-one years.

Besides the children who survived him, the testator had a son, Warren S. Burnham, named in the will, who died before him, viz., December 31st, 1827, aged twenty-four years, unmarried, intestate and without issue; also a son, Henry Burnham, who died before his father, viz., February 15, 1830, aged twenty-five years, unmarried, intestate and without issue.

Three of the testator's sons who survived him had died before the trial, viz.: Thomas Burnham, August 21st, 1841,

under the age of twenty-one, and Charles Burnham, February 23, 1843, aged thirty-six years, both dying unmarried, intestate and without issue. The third, James M. Burnham, died August 31, 1849, aged thirty-three years, intestate, but married and leaving a widow and two infant children.

The testator, by his will, devised all his real estate to his sons, Warren S., Henry and Charles Burnham, "to hold the same unto and to the use of them, the said Warren S., Henry and Charles, their heirs and assigns forever, upon trust that they, the said Warren S., Henry and Charles Burnham, or the survivors or survivor of them, or the heirs or assigns of such survivor, do and shall, as soon after the death of my wife as they in their discretion shall see fit, sell and absolutely dispose of the same, together or in parcels, by public auction or private contract, as to them or him shall seem expedient, for the best price or prices in money that can be reasonably had or obtained for the same respectively, and respectively to convey and surrender the same accordingly. * * * My will further is, that the moneys which shall arise by or from such sale or sales, as aforesaid, shall be deemed to be a part of my personal estate, and that my said wife shall, during her life, receive and take to her own use one-third part of the clear yearly rents and profits of the said hereditaments and premises; and that the residue of the clear yearly rents and profits of the said hereditaments and premises in the mean time, until the same shall be sold, or of so much thereof as shall be remaining unsold, shall be deemed to be part of my personal estate; and that the same moneys, rents and profits shall be subject to the dispositions hereinafter made concerning my personal estate."

The will then gave all the testator's personal estate, remaining after payment of debts, to the sons before named, as trustees, with power to invest in stocks and securities, and to change the investments at discretion, and required that

the trustees "do and shall pay or transfer all such principal moneys, stocks, funds and securities unto my sons Warren S., Henry, Charles, Michael, James and Thomas, and my daughters Elizabeth, Harriet, Ellen and Anna, equally to be divided among them, share and share alike; the shares of my said sons to become vested in them respectively on their attaining their respective ages of twenty-one years, and to be paid and transferred at the times when they shall respectively attain such age ; and the shares of said daughters to be vested in my said trustees, and applied and disposed of in the manner hereinafter directed; provided, however, and I do hereby declare my will to be, that if any of my said children, being a son or sons, shall depart this life before he or they shall attain his or their respective ages of twenty-one years, or being a daughter or daughters, shall die without leaving lawful issue, then the share or shares of him, her or them so dying, shall go and accrue to the survivors of my said children, and be equally divided amongst them, share and share alike; and the same shall become vested and payable or transferable at such ages and times as his, her or their original portion and portions are hereby directed to become vested and payable or transferable as aforesaid; and in case of the death of any other of my said children before such accruing or surviving share or shares shall become vested as aforesaid, then every such accruing or surviving part or share shall again be subject and liable to such right, chance, contingency or condition of accruer, to and amongst the survivors or survivor, and others or other of my said children, as hereinbefore is provided touching the said original portion or portions.

"And upon the further trust that the said trustees do and shall pay and apply the dividends or interest of the shares or share of such of my said sons as shall not have attained the age of twenty-one years, and of such of my said daughters as shall be under the age of twenty-one years and unmarried, for and towards his, her or their maintenance

Savage *v.* Burnham.

and education, respectively; and, with respect to the shares of my said daughters, respectively, my will is that the said trustees do and shall pay the dividends, interest and income thereof, from the times when my said daughters shall attain their respective ages of twenty-one years or be married, which shall first happen, into the proper hands of my said daughters respectively, for their respective, sole and separate use and benefit, exclusively of any husband or husbands with whom they may respectively intermarry, and so as the same may not be subject or liable to the power, control, debts or engagements of any such husband or husbands; and that, from and immediately after the decease of my said daughters, respectively, the shares of such of them as shall leave lawful issue shall go to and become vested in such issue, and the shares of such of them as shall die without leaving lawful issue shall go and accrue to the survivors of my said children, as is herebefore directed."

The judge held several of the trusts attempted to be created by the will void, as tending to unlawful perpetuities, and that the invalid provisions and directions were so connected with the legal ones as to be incapable of separation, without destroying the testator's general scheme and intent. He therefore ordered judgment declaring the whole will void. The guardian *ad litem* of the infant defendants, children of the testator's daughters, whose remainders over in fee, after the death of their mothers, were defeated by the judgment, appealed. The Supreme Court, at general term in the first district, affirmed the judgment, and the guardian appealed to this court. The cause was submitted on printed arguments.

*John P. Crosby*, guardian, in person, and *Ralph Lockwood*, for appellant.

*Benjamin F. Butler*, for respondents.

COMSTOCK, J. The Supreme Court has determined in this case that some of the provisions in the will of Michael Burnham, deceased, are invalid, as tending to an unlawful perpetuity, and on that ground the whole will has been adjudged to be void. So far as appears from the reasons assigned for this conclusion, the question whether the said limitations can and ought to be cut off, leaving the other parts of the will to stand, does not seem to have been examined. We agree that some of the limitations are void for the reason stated, but having come to a conclusion that the judgment is erroneous in subverting the whole will, it becomes necessary to examine and pass upon several questions in order that a proper judgment may be rendered.

The provisions of the will, so far as material, may be briefly stated as follows: The testator gave all his real and personal estate to trustees, upon trust to sell the real estate after the death of his widow, she to have one-third of the net rents and profits during life, and the other two-thirds to be deemed personal estate, and form a part of the trust fund. That fund was to be constituted from the personal estate, the proceeds of the real estate when sold (also to be deemed personal estate), and from the said two-thirds of the rents and profits. At the making of the will the testator had ten children, six sons and four daughters. After providing, in the manner stated, for the consolidation of his estate into a trust fund, he directed that it should go ultimately, in equal parts, to his six sons and the children of his four daughters, the shares of the sons to "become vested" and be paid over or transferred when they should, respectively, attain the age of twenty-one years, and the other four shares, which are designated in the will as the shares of the daughters, "to go to and become vested" in the issue of the daughters, immediately after their decease, respectively. In respect to the income of the several shares, the will provides that the trustees should "apply the dividends or interest" of the sons' shares to their maintenance and education

Savage *v.* Burnham.

during their minority, and of the daughters' shares, to their education and support until twenty-one or married. After the daughters should arrive at that age or be married, the income of their shares was to be paid to them for their separate use, and not subject to any marital rights of their husbands. The will further provided that if a son should die before arriving at the age of twenty-one, or if a daughter should die without leaving lawful issue, then the share of the one so dying was to go to the surviving children of the testator, and fall under the same contingencies as their original shares, and so on, if any other son should die under twenty-one, or daughter without issue; the intention of the testator clearly being that no original share, or fraction of a share, accruing by survivorship, should become vested in interest, except in the contingencies named.

Two of the six sons named in the will died at the ages of twenty-four and twenty-five, unmarried and without issue, before the death of the testator, which occurred in 1836. The four sons who survived him were then of full age, except Thomas, who died, a minor and without issue, in 1841. The daughters are all still living, married, and have children. The testator's wife also survived him, and she is still living. It is quite evident from this statement that the right of the daughters to the separate enjoyment of the income upon their shares in the estate, and the rights of their children to the principal of those shares, must depend on the question whether such parts of the will as are lawful, by themselves considered, are to be upheld.

This will, in the first place, creates a trust in the testator's real estate, and this trust is valid within the 55th section of the statute of "uses and trusts." (1 *R. S.*, 728.) The direction of the will is to sell the lands, and the sale is to be made for division amongst and the "benefit of" legatees. This was the ultimate purpose, to take effect after the death of the widow. I think it clear, also, that until then the trustees, and not the beneficiaries, are to receive the rents

and profits, paying one-third to the widow during her life, and carrying the other two-thirds into the general trust fund, where they are to be applied as income to the education and support of the sons and daughters during their minorities, and, in the case of the daughters, to be paid over to them during their lives. It is true that the will, in the directions concerning the " dividends, interest and income " of the estate, does not in terms speak of the rents and profits of the real estate before its ultimate sale and conversion; but in the contemplation of the testator the real estate was a part of the fund, subject to the dispositions which he made in respect both to principal and income. Until the period for sale and conversion shall arrive, I think it is the duty of the trustees not to carry the rents and profits into the principal of the trust fund, but to apply them as income, according to the directions of the will. In this view, there can be no unlawful accumulation. If the income is more than is required for education and support, the accumulation must necessarily cease, upon each share, as the sons or daughters arrive at the age of twenty-one. (1 *R. S.*, 726, § 37.) In the case of the sons the principal then vests, and in the case of the daughters the direction is explicit to pay them the whole income after that period of their lives. If the widow had died soon after the testator, and the real estate had been sold, the proceeds would form a part of the principal of the trust fund, and the whole would have fallen under the dispositions of the will, in favor of the sons and daughters. The testator seems to contemplate that such would be the condition of the fund at an early day, and if it had been, there could be no doubt in respect to the disposition of all the income. But the widow has now survived him over twenty years, and while she lives the fund cannot take the consolidated shape it was intended ultimately to assume. Now, it may well be true, and from some facts which appear I conclude it is, that the estate was chiefly real, and, as such, productive. In such a case, if the rents and profits are to

Savage *v.* Burnham.

accumulate as part of the principal of the trust fund, the provision made by the testator for education and support out of income substantially failed, and the provision for the daughters during their lives also failed, if not entirely, yet mainly. My conclusion is that the trustees were to receive the rents and profits of the lands during the widow's life, pay over to her one-third, and apply the other two-thirds according to the directions of the testator concerning the income of his estate. These directions bring the trust as to the lands within the statute definition of a trust to receive rents and profits, and "apply them to the use of any person during the life of such person, or for any shorter term." (1 *R. S.*, 728, §55, *subd.* 3.) The trust was therefore valid for this immediate purpose as well as the ultimate purpose of sale for the benefit of legatees, and it became active as soon as the testator died.

I do not overlook the doctrine of equitable conversion, according to which real estate is deemed to be changed into personal when such change is directed and provided for in a will or other instrument. But this doctrine must be taken with the qualification that the change does not take place in theory until the period arrives or event occurs when the conversion ought to be made. Thus, in the present case, the real estate is to be sold and the proceeds to become personalty after the decease of the testator's widow and not before. When that period arrives, the estate will be deemed to undergo the change directed by the will, whether then actually sold or not. Until then, the testator not only contemplated no change, but on the contrary forbid it. The trust which he imposed upon his real estate was therefore, in the first instance, a trust in lands, and the rules to be applied to it, so far at least as questions of alienability are concerned, are those which govern trusts of that character.

A valid trust in lands vests the whole legal and equitable title in the trustee and is inalienable. (1 *R. S.*, 729, §§ 60, 65; *Costar* v. *Lorillard*, 14 *Wend.*, 265.) A sale of the

lands during the life of the widow would be in contravention of the trust declared on the face of the will and therefore void. ( § 65.) The conclusion follows, that, in examining the further provisions of the will, in order to ascertain whether any and what limitations are unlawful as tending to the creation of perpetuities, the life of the widow of the testator is to be reckoned as one of the two beyond which the absolute ownership of the shares given to the sons and daughters, or children of the daughters, cannot be suspended. It is true that the particular trust of which I have been speaking does not embrace the whole fund subject to the ultimate dispositions of the will. But the real estate evidently constitutes the greater portion of that fund, and the whole was so blended in the testator's mind, and in the contingent limitations of the various shares in which it was to go to his descendants, that I shall attempt no separation for the purpose of saving a limitation in respect to one portion of the fund and cutting it off in respect to another. These limitations are impressed upon the whole fund, without discrimination between the sources from which it was to be derived; and, therefore, if the continuance of a particular life, on which an inalienable trust depended, suspends the power of alienation as to one portion of the blended mass, no further limitation, applying equally to all portions, can be good which keeps the ownership in abeyance for more than a single additional life.

I come now to the consideration of the contingent limitations, which are supposed to suspend the absolute ownership of the shares given to the testator's descendants beyond two lives in being at his death, which is the longest period allowed by law. We have already seen that the particular trust in the real estate, which must last as long as the widow lives, creates a suspension of the power to alienate for one life, which affects all the shares alike. After her death, the question must be considered in reference to each share separately, because each is given as a separate legacy or distinct

portion of the estate. The whole estate, it is true, is then consolidated under one trust; but it is a trust for distribution and payment to each beneficiary at the times and upon the events specified in the will. This is a trust in personal property, with which the statutes of "uses and trusts" in lands has nothing to do. ( *Kane* v. *Gott*, 24 *Wend.*, 641.) If the beneficial interests under the will had been given to all the children in joint tenancy, and the will had provided that the whole estate should be kept under this trust until all the lives or minorities were spent, then it may well be that the absolute ownership of the whole would be deemed suspended. If so, the trust and all the interests dependent upon it would fail. Such is not the structure of this will. There is indeed but one fund, which is embraced in a single trust, but the interests carved out of it are entirely distinct. The trust itself is necessarily divisible as often as the beneficial dispositions of the will call for a division and separation of any portion of the estate from the residue. When the share of any beneficiary vests according to the will and becomes payable, it is the duty of the trustees to pay it over accordingly, and the trust as to that share at once ceases. If a different rule of construction were to be applied to wills framed as this is, it would lead to endless prolixity in the preparation of such instruments, because, although a testator might desire to make provisions precisely alike for numerous descendants, it would be necessary for him to frame a separate clause and perhaps a separate trust for each one. ( *Mason* v. *Mason's Executors*, 2 *Sand. Ch. R.*, 432; *De Peyster* v. *Clendinning*, 8 *Paige.*, 295 ; *and S. C. on appeal*, 26 *Wend.*, 21.)

It results from these considerations that the bequests of portions of the estate to the testator's sons, to vest and become payable when they should severally arrive at the age of twenty-one, and of portions to the daughters' children, to vest and become payable on the death of the daughters, respectively, are valid. These bequests are of course

contingent: in the case of the sons the contingency being that they attain the age of twenty-one, and in the case of the daughters that they leave children surviving them. But in either case the contingency must happen, if at all, within the compass of a single life in being at the death of the testator. But all the further limitations engrafted upon these portions, which can have the effect to keep the ownership any longer in suspense, are void. A suspension of ownership, during a minority, may be a suspension during a life, and therefore a minority does not admit of a further contingent limitation where a life would not. It has already been shown that the preliminary trust in the lands tied up the estate during the widow's life. The statute declares, in the case of a will, that the "absolute ownership of personal property shall not be suspended by any limitation or condition for a longer period than during the continuance and until the termination of not more than two lives in being at the death of the testator." (1 *R. S.*, 773, § 1.) But estates cannot be tied up during one life by a trust in lands, and then for two lives more as personal property, by means of a direction to convert them into money or personalty, and then impressing on them new limitations in that form. The first bequests, then, to the sons and the daughters' children, including the dispositions of income until those bequests should vest or fail, were good. The limitations over, in case of the failure of all or any one of them, were void.

Can those ulterior limitations over be dropped and the primary disposition of the estate be allowed to stand? This should be done if the intentions of the testator will be thereby effectuated rather than defeated. It is easy of demonstration that such will be the case. In solving such an inquiry, we are entitled to look not only at the will but at the external circumstances in order to see its practical results.

In the first place, the daughters are married and they all have children. A leading motive which prompted the tes-

Savage *v.* Burnham.

tator to make this will must have been to secure the income of the daughters' shares to their sole and separate use, and the principal to their children. Without this design, there were but little occasion for the will, for the testator has not altered the proportions which his descendants would take by distribution or descent. This was a lawful design, and it ought not to be thwarted unless there is some rule of law which requires it to be done.

In the next place, three of the four sons who survived the testator had attained the age of twenty-one when he died. Their shares, therefore, vested immediately by the very terms of the will. In respect to those shares, as well as all the others, there was, and there still is, a practical difficulty in the way of paying them over. The real estate cannot, during the life of the widow, be sold and brought into the fund for distribution; but the shares all vest in interest at the times and upon the events specified in the will.

One of the sons, Thomas, died after the testator, and under the age of twenty-one, intestate, unmarried and without issue. His portion, therefore, never vested. The further limitations of that share over to the survivors, being also contingent in their nature, as are now seen, were void, and the beneficial interest in the share must therefore be regarded as undisposed of by the will. But this result does not materially interfere with the testator's general plan. Regarding it as undisposed of, the widow was entitled to some portion of it, as in cases of intestacy. The surviving children, or their representatives, were entitled to the residue by the rules of distribution, as they would be entitled to the whole according to the will, but for the invalidity of the contingent limitations over in their favor. The only consequence is, that the widow takes a minute fraction of the estate which the will does not give to her. The value of the lapsed portion being ascertained, the law will determine how much of it went to the widow and how much to the children of the testator. The legal interest in the whole

estate, it may be well to observe, was in the trustees until the lapse occurred. It was in them for the very purpose of sustaining and feeding the original contingent limitation to Thomas, as well as all the other valid limitations and purposes of the will. The equitable interests were all in abeyance until they should become vested according to the will, or until they should lapse and go in a course of descent or distribution. The devolution, therefore, of the share of Thomas upon the next of kin of the testator must be deemed to have taken place at the time the share lapsed, and not at the testator's death. This avoids the incongruity which has been suggested, of Thomas taking, as one of the testator's next of kin, a portion of a share lapsed by his own death.

As already stated, the four daughters all have children. If the children of any one of them should all die before their mother, and she should leave no issue, an event now very improbable, then the share given to such children cannot vest under the will, the further limitations being contingent and void. There is yet, therefore, a possibility that the bequest of the four shares thus situated may fail. At least, the possibility exists in respect to the shares given to the children of the three daughters first dying, because the limitations over, in case no children survive, will still be contingent on the event of the remaining daughter leaving issue. If in the course of nature these possibilities shall become facts, if one or more of these four shares shall lapse, a devolution will then take place upon the testator's next of kin, as it has already taken place in respect to the share of the son Thomas. But this certainly is no reason why the valid provisions of the will should not be sustained, so that the daughters' children may take the bounty designed for them when they shall become entitled to it.

We are next to consider the fate of the shares given to the two sons who died before the testator, after arriving at the age of twenty-one, unmarried, and without issue. The

general rule is clear, that, if the legatee dies before the testator, the legacy becomes extinguished and the thing or sum given sinks into the residue or goes as so much of the estate undisposed of. To this rule there are not a few exceptions, as well settled as the rule itself, one of which would include this case if the two sons had died before attaining the age of twenty-one. In that event the very terms of the will would have given their shares to the children who survived them and the testator. (*Roper on Legacies*, 329, 330; 1 *Jac. & Walk.*, 1; 1 *P. Wms.*, 274.) But these sons lived to the age when their shares were to vest. If they had survived the testator, the limitation over could not take effect upon their decease, and quite as plainly it cannot in the event of their dying before the testator. The substituted limitation cannot take effect, because the event occurred which by the terms of the will defeated it. (*Roper*, 336.) Another exception to the rule is, where bequests are given to a class of persons as tenants in common, as to the children of the testator or of some other person. In such case, those of the class described who survive the testator are deemed to be the exclusive objects of the gift. But when a will directs an aggregate fund to be divided amongst individuals by name, share and share alike, the rule seems to be well settled that the interests of those dying before the testator are deemed to have lapsed. (2 *Wms. on Executors*, 763; *Roper*, 331, *and cases cited.*) I can find, indeed, in the books no exception, to the general rule first stated, which will include the portions given to these two sons. Those portions, therefore, being two-tenths of the whole fund, must be considered as undisposed of by the will, and will go according to the rules of distribution. This conclusion, however, it is proper to observe, will not affect the legal estate vested in the trustees.

From this examination of the practical results of sustaining those limitations of the will which are consistent with the rules of law, it is evident that the primary dispositions in favor of the sons who survived the testator and attained

the age of twenty-one, and in favor of the daughters and their children, can take effect according to his intention, and that his general plan will be promoted rather than defeated. The will, in its valid provisions, devotes the income of the several shares to the education and support of the sons and daughters during their minority, and puts the principal in trust until the shares are to vest. It gives to each daughter the whole income of her share, after twenty-one or marriage, during her life, free from the control of her husband. The principal vests in each of the sons on arriving at the age of twenty-one, and in the children of each daughter on her decease. These are the objects which the testator had principally in view. If these objects, or any of them, fail, then there are further limitations over, which, as we have seen, are invalid; but the invalidity of those should not, in reason or justice, be allowed to subvert the testator's primary and fundamental design.

It is truly said, however, that all the limitations, as well those which are bad as those which are good, are enveloped in a single trust; and on this ground it is claimed that the whole trust, and all the dispositions dependent on it, must fall to the ground. It needs no argument to show that a trust created for a single purpose, unauthorized by law, is void; but it does not follow that an entire trust is void where it is made to subserve also another purpose which is lawful. It has sometimes been thought that the maxim, " void in part void *in toto*," expresses a general principle of law; but in reality it does not, as every one must see on a moment's reflection. In the nature of things, in reason, and, above all, in justice, it may and must be true that a deed, a will or other instrument can in part be good, although another part is void because in contravention of positive law. This subject was carefully considered in the late Court of Errors, in the case of *Darling* v. *Rogers* ( 22 *Wend.*, 483 ), where the trust was to mortgage as well as to sell real estate for the payment of debts; and it was unanimously held that

the trust was valid for the purpose of sale, although the statute (1 *R. S.*, 728, § 55) did not allow it for the purpose of raising money on mortgage for the benefit of creditors. In *Kane* v. *Gott* (7 *Paige*, 521; *S. C., on appeal*, 24 *Wend.*, 641) the very question was determined by the chancellor and the Court of Errors, in the case of a will containing several limitations, some of which were void as tending to a perpetuity, and all of them being involved in a single trust. It was there held that the valid limitations and the trust on which they were dependent should stand. I am not sure whether there is anything in the subsequent case of *Harris* v. *Clark* (3 *Seld.*, 242), decided by this court, inconsistent with the doctrine thus settled. It is quite certain that the doctrine was not at all examined when that case was decided, and that the cases which I have mentioned were not noticed. (*Curtis* v. *Leavitt*, 15 *N. Y.*, 96.)

A further question has been made, whether the widow of the testator is entitled to dower in the real estate in addition to the provision made for her by the will. The familiar rule on this subject is, that a wife is not put to her election between dower and a testamentary disposition in her favor, unless it clearly appear from the will that the provision made for her was intended as a substitute for that to which she is entitled by law. The intention need not be declared in express words. It may be implied, if the claim of dower would be plainly inconsistent with the will. In this case the testator devised and bequeathed all his estate, real and personal, to trustees; the real estate upon trust to sell after the death of his wife. During her life she was to have one-third of the clear rents and profits, and the other two-thirds were to go into the general trust fund for distribution. The entire estate, with all its income, except the one third of the rents and profits of the land, is given, in the clearest possible terms, to the testator's children and the children of his daughters. It is, therefore, impossible for her to receive any part of it, except what is there expressly given to her, with-

out subverting the will to that extent.   If no provision had been made for her, she would have been entitled to have one-third of the real estate set off to her during life, and in this she would have held the legal estate.   Inconsistently with this, the will gives the legal estate in all the lands to trustees, and directs that she shall have one-third of the rents; the other two-thirds to go into a personal fund for distribution.   A claim of dower in the same lands cannot stand with these provisions; and we must, therefore, hold that the widow was bound to elect whether she would take her dower or the provision in her favor made by the will.

We have now disposed of the leading points which can arise under the will in question.   Upon another trial or hearing in the Supreme Court, the rights of the parties will be adjudged in accordance with the principles which have been stated, and if the case shall involve further details, those will also be settled by the judgment of that court to be rendered on such trial.

The judgment must be reversed and a new trial granted.

ROOSEVELT, J., delivered an opinion concurring with that of COMSTOCK, J., in sustaining the will, so far as relates to the devise to the children of the testator's daughters, and in holding void the contingent limitations over, in the event of their dying without issue.   In respect to the shares of the two sons, who, after attaining their majority, died in the lifetime of the testator, he said: Two of the sons of the testator, named in his will, and provided for by it, died before their father; and this change of circumstances has given rise to still another difficulty.   Do the two shares of the two deceased sons lapse and pass to the testator's heirs and next of kin, as if there had been no will?   Or, do they, as in ordinary cases, go merely to diminish the divisor and increase the dividend among the remaining eight?

The will directs the fund to be paid and transferred "unto my sons Warren, Henry, Charles, Michael, James and

Thomas, and my daughters Elizabeth, Harriet, Ellen and Ann, equally to be divided among them, share and share alike." These, it is conceded, were all his children; and it is obvious that they were provided for in that character and in that only. The bounty was that of a parent, and of a parent having no preferences among his children. Warren and Charles, who died, were the same to him as Henry Michael, James and Thomas, who survived. The ten, when he made his will, were his all; and, when he died, and his will took effect, the eight were equally his all. The same reason which dictated the division into ten shares when there were ten children, was equally potent to call for a division into eight shares when there were only eight children. If, then, the testator clearly meant all his children, be their number more or less, shall the mere surplusage of giving them names defeat his obvious intent? Suppose a child unexpectedly born to the testator after making his will—Mr. Burnham, it will be remembered, did not die for ten years or more—would the court say that such child was intended by the father to be excluded from his bounty merely because the other children had been named before it was born? The case of nephews and nieces, one of those cited as authority, stands upon a very different footing from that of a man's own children. Nature and law both make the distinction, and presumptions and implications, which would be unavoidable in the one case, might be very unreliable, and for that reason inadmissible in the other. The judgment of the Supreme Court, declaring all the provisions in the will to be void, should be reversed.

All the other judges, except Strong, J., who expressed no opinion, concurred in the opinion of Comstock, J.

Judgment reversed and new trial ordered.