### IN THE

# SURROGATES' COURTS

### OF THE

## STATE OF NEW YORK.

NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—
July, 1879.

### CROWE v. BRADY.

*In the matter of the accounting of* THOMAS B. BRADY,
*as administrator, &c., of* CATHERINE BRADY,
*deceased.*

The death of one who has deposited moneys in his name, as trustee for
another, does not constitute the trust funds assets of decedent's es-
tate; at most, it would devolve the trust upon decedent's representa-
tive, and the surrogate's court has no authority to call him to ac-
count as trustee, for the administration of that trust.

An entry by an administrator in his account book, under the head of an
inventory of the effects of the estate, of money deposited in bank
by the intestate, and withdrawn by him, under authority of his let-
ters, does not prevent him from claiming the money as his own; nor·
is he concluded by a declaration of the intestate, made in her life-·
time, in his absence, inconsistent with his title.

In proceedings against an administrator, to compel him to account, his
testimony concerning transactions and conversations with the intes-
tate, called out by the moving party, cannot be stricken out or disre-
garded upon the latter's motion, though otherwise if it had. been،
offered by the administrator, and objected to at the time.        ◆

VOL. V.—1

The intestate, at the time of her death, possessed, besides other property, certain moneys deposited in savings banks in her own name, individually, and in trust for her several children. Upon an application by one of the children to compel her father, the administrator, to account for these moneys, the evidence showed that they were derived exclusively from his earnings, and that he had delivered them to the intestate, as his agent, to deposit the same in trust; that she had withdrawn the moneys from bank through the instrumentality of his letters, making an entry, in an account book, of the receipt thereof, as of a portion of the effects of the intestate, and had re-deposited a portion in his own name, as trustee for certain of the children, but subsequently withdrew the amounts and claimed to have expended the moneys for the support and maintenance of the children. *Held,* that the husband, by the mere delivery of these moneys to his wife, did not divest himself of his title thereto, and that he was not estopped from claiming title by the entry in his account book, nor by procuring the moneys through the instrumentality of his letters.

*Held,* also, that upon the petitioner's own theory, the moneys claimed by the children did not constitute assets of the intestate's estate, for which the administrator, as such, could be called to account in the surrogate's court, but that their remedy was an action against the husband, for conversion.

1 *R. S.*, 780, § 68, and the conflict between Bunn *v.* Vaughan (3 *Keyes,* 345); Kane *v.* Gott (24 *Wend.,* 641); Savage *v.* Burnham (17 *N. Y.,* 561), and Curtis *v.* Smith (60 *Barb.*, 9), as to the application of that section to personal estate, commented upon.

APPLICATION by one of the children of decedent and the administrator, to compel the latter to account as such administrator.

The petition of Catherine A. Crowe, one of the children of decedent and the administrator, alleged the death of decedent, December 12, 1867, seized and possessed of No. 204 Henry street in New York city, worth $12,000, and personal property consisting in part of $3,333, deposited in banks; that the administrator received letters February 5, 1868, and that he had failed to account; and prayed for an accounting.

In answer to the petition, the administrator denied

that any property of the decedent had come into his hands as administrator, and alleged that the money referred to in the petition belonged to him; that decedent left six children, and that he had expended said moneys, and others of his own in addition, for their support.

The matter thus put in issue was referred to A. S. Sullivan, Esq., the order of reference, though absolute, being regarded as a reference by authority of *L.* 1870, ch. 359, § 6, and as subject to the confirmation of this court.

The referee returned the testimony taken by him and filed his report.

The following is a portion of the testimony, deemed material to be inserted here :

Thomas B. Brady, the administrator, being called by petitioner and sworn, testified that no property came into his hands as administrator ; that the property did not belong to decedent, but was intrusted to her as his agent to deposit in the banks, and that she made the deposits under his instructions for the benefit of the children ; that he presented an order from the Surrogate, and drew out the money from the banks ; that he gave instructions to deposit the money in the names of his children, for the purpose of drawing full interest ; that when he drew it, it was transferred to his name in trust for his children, so that he could draw it out, and use it for their wants ; that he instructed decedent to deposit the money in her name, and in the children's names, so that it would draw the most interest, as sums under $500 drew one per cent. more than larger sums ; that he drew out part of the moneys

for the necessities of his children, but that he had no idea how much, as the accounts had been stolen, and after stating the names and ages of his children, he testified that his best recollection was that, when he balanced his accounts in 1872, he had expended $5,400 for his children; that his books and vouchers of such outlay were stolen; that he was married to decedent in 1851, and was engaged with Lyelle, Polhemus & Co; from 1847 to 1871, and made large earnings, saving several hundred dollars every year, which his wife invested for him, as he had no time to attend to it; that when he saved money he took it home and delivered it to decedent to deposit to the best advantage in the savings banks; that from 1851 to 1865 he saved enough money to buy 204 Henry street, which was purchased with his earnings; that from 1865 he saved $3,000 or more, and delivered it from time to time to his wife to deposit as aforesaid.; that all the money deposited by his wife in her name, and that of the children, was earned and saved by him, and no part of it belonged to her, or the children; that when he married his wife he had no property, nor did she inherit any afterwards; that she superintended his household as his wife.

Mrs. Ann C. Fitzpatrick, being sworn for petitioner, testified that she knew decedent, and saw savings bank books in her possession; that decedent kept those books in a pocket sewed on her flannel skirt on her person; that the administrator called upon witness after the death of his wife, and inquired where the books were, and witness told him, in the flannel skirt, and where it was to be found; that decedent said

she was putting money in for the children's benefit, when she was going to the bank at one time.

This latter evidence was objected to as incompetent and as hearsay. The objection was overruled by the referee, and the evidence received.

On cross-examination, witness testified that this occurred several years before decedent's death ; that she went with decedent to the bank on that occasion ; that she did not refer to any particular bank.

Thomas B. Brady testified in his own behalf to his keeping books of account of the expenditures of his children, and stated their disappearance and his search for them, and that he had vouchers for his disbursements, which also disappeared, and could not be found ; that the bank books of his wife were kept in a satchel in a trunk in her sleeping apartments, and after her death they were kept in the same place ; and contradicted Mrs. Fitzpatrick as to their being in decedent's flannel skirt, and that he called upon her respecting the books ; that when he handed the money to his wife to deposit he would tell her on what account to deposit, and if any of the accounts were full, he would instruct her to open new ones, and gave her the name, and that if she drew any interest she brought it home and delivered it to him ; that the banks would not allow two accounts to be opened in one name ; that the moneys in question were all the moneys which he had saved during the period mentioned ; that he took out letters of administration for the purpose of getting the money from the bank, which was in decedent's name in the form of a trust for his

children ; that he kept books as administrator by the advice of his counsel, as a precaution against trouble.

On being shown page 30 of his book, stating the money received as administrator, he testified that the statement that it was the property of decedent was not true.

Counsel for the petitioner moved to strike out several portions of the testimony of the administrator, respecting conversations and transactions with decedent, as inadmissible under section 399 of the code, which motion was denied by the referee on the ground that the evidence was received without objection, and the motion to strike out was too late.

By his report, the referee found that the decedent died December 12, 1867, leaving six children and her husband, the administrator, surviving ; one of the children being about twenty-five years old, another about twenty-three years, another about twenty-two, one about eighteen, one fourteen, and one eleven.

That at her death decedent was possessed of certain moneys deposited in savings banks, in her name, individually, and for her children, amounting to $3,251.64, as follows :

Bowery Savings Bank, in the following name:— " Catherine Brady, in trust for Anna L. Brady, $215.27 ;" "Catherine Brady, in trust for Ada A. Brady, $107.62 ;" " Catherine Brady, in trust for Emilie A. Brady, $535.55 ;" " Catherine Brady, in trust, $535.55." Bank of Savings :—" Catherine Brady, in trust for Ada A. Brady, $530.12 ;" " Catherine Brady, $530.12 ;" " Catherine Brady, in trust for Kate

Brady, $534.40;" "Catherine Brady, in trust for Ann L. Brady, 263.01."

That this money was the property of decedent, derived mainly from the gift of her husband, earned by him ; that the decedent took and retained possession of the bank-books ; that it appeared from the evidence that, in July, 1868, after the administrator's appointment, he caused the accounts in said banks to be closed, and new accounts opened of the same moneys in his name, and in trust for his children, as follows : July 28, in the Bowery Bank, in trust for Anna L. Brady, $215.27, which he maintained and added to until October 1, 1871 ; in trust for Emily A., $535.55, to which he added other deposits up to February, 1875 ; that, of the money deposited by decedent in trust for Kate Brady in said bank, $300 was re-deposited by him as trustee for her, January 6, 1869, and with subsequent additions and interest amounted to $577.85, July 1, 1871 ; which the referee cited as illustrations of the actions of the administrator ; and found that as he acquired possession of the moneys as administrator, he was liable to account for them as such, and that the moneys deposited by the decedent in the names of her children belonged to them, who would be entitled to enforce their claim for them against the administrator, and that he was accountable for the sums deposited in the name of his wife the decedent individually, which were collected by him ; that the administrator spent money upon the education and maintenance of the children after the death of the mother, but that it did not clearly appear, by the evidence, how long he did so, or in what amount, except that, by his own estimate,

which the referee regarded as liberal, the expenses of each child amounted to $300 per annum ; that he had no right to charge that against the estate, because not appointed guardian of them, or required to account as such ; that the petitioner and her brother and sisters were entitled to the moneys deposited in trust for them by the decedent, and that the administrator, having taken possession of them, was accountable therefor, as well as for moneys deposited by decedent in her individual name ; and that as the administrator filed no inventory, the proceedings were rendered necessary by his refusal to account, and the costs should be chargeable to him personally.

To this report the administrator filed the following exceptions : That this court had no jurisdiction to try the title to the moneys mentioned ; that the order of reference did not confer upon the referee power to hear and determine ; that he erred in finding that the moneys were assets of this estate, as the administrator was not estopped from showing his title thereto by reason of his receipt of the same from the banks on presentation of his letters ; that if the moneys belonged to the decedent when the deposits were made, such deposits were in trust for the children, and vested the title in them, and therefore it did not become assets of this estate, and that the administrator could not be called to account for them in this proceeding ; and that if the moneys deposited in her name were hers, one-third thereof would belong to the administrator, as her husband ; that the property, if it belonged to the decedent, included the house in Henry street, yet as no guardian was appointed for the infant children, the

father, the administrator, became their guardian in *socage*, and entitled to use their moneys, being without means himself, for their necessary support and education, and as such guardian was entitled to be allowed such expenditure.

STEWART & TOWNLEY, *for petitioner.*

WAKEMAN & LATTING, *for administrator.*

THE SURROGATE.—The evidence in this case leaves the matter in no real doubt as to the source whence the money deposited by the decedent to her credit in trust for her children was derived, for it is entirely apparent that it all belonged to the husband of decedent, Thomas B. Brady, unless he divested himself of his title by delivering it to his wife as a gift; and I regard all the testimony taken in this proceeding upon the subject of the wife's earnings as well as the earnings of the petitioner, as having no bearing upon that question, so that the only evidence militating against that of the husband as to the ownership of the property, is the fact that it appears to have been deposited by the decedent, and that the administrator entered in his account book, under the head of an inventory of the effects of the estate, the several sums thus deposited by his wife and withdrawn by him under the authority of his letters of administration; for I differ entirely with the referee in this matter, in his estimate of the significance of the declaration of the decedent to a third person, that she was going to deposit money in trust for her children, since this inquiry is between the estate of the decedent and the husband, who claims to be the owner, and no declaration of hers in his absence could affect his title.

I am of the opinion that the testimony should not have been received on such an inquiry, for no claim, or declaration of hers, in the absence of the alleged claimant, would tend to show her title, or divest that of any other person, while any declaration tending to show liability on the part of the decedent would be binding upon her and her representative, and it appears to me that those two ideas have been confounded.

The fact of the deposit by decedent, in her name, as trustee for her children, does not seem to me inconsistent with the facts testified to by the husband, or with the ownership of the money by him, and there appears, therefore, to be nothing to militate against the testimony of the husband, except his own conduct in treating the money as assets of the decedent's estate. The fact that he took out letters, and obtained the money under those letters, has no significance when explained, because, being thus deposited, it was the only method by which he could obtain possession of the money, unless he should resort to an action for it as the owner, and it is of very frequent occurrence that moneys deposited in the name of another, who is deceased, are obtained by the owner through the instrumentality of letters of administration. Therefore, nothing is left except the memoranda in his book, to which reference has already been made, to materially contradict or impair the force of the testimony given by the administrator, and it is quite clear that, if he had made a formal inventory, and filed it under the statute, making a clear case, he could explain that inventory and overcome its force as a charge against him, by showing that the property did not, in fact, belong to the estate.

It is true that all the testimony of the administrator which was given, of transactions and conversations with the decedent, would have been excluded under the Code if objected to and offered by him, but it was called out by petitioner, and as it was not objected to, but offered by the moving party, it stands as evidence in the case, and this court has no right to disregard it. If I understand the claim of the petitioner, it is substantially that this money principally and originally belonged to the father, and there is no evidence in the case tending to prove any gift by him to the decedent; on the contrary, all the evidence there is on this point is that of the decedent's husband—that he delivered it to her to be deposited as his agent, and as his property, and all the title that she had is evidenced by the fact of deposit in her name, individually or as trustee for the children : but suppose, as to the deposit in favor of the children, it be held that the decedent was trustee of the fund for the children respectively, the death of the trustee did not constitute that trust fund assets of her estate, and at most it would devolve the trust upon her representative, and it seems to me equally clear that in that aspect of the case I have no authority to call him to account as trustee for the administration of that trust, for this court has no jurisdiction over such trustee ; and though by virtue of his representation of the deceased trustee, the trust may devolve upon him, yet it in no way constitutes him custodian of the trust estate, as assets belonging to the deceased trustee. If it had been alleged that the deceased trustee had misappropriated the trust fund, then undoubtedly the *cestui que trust* could look to the estate, through its

representative, for remuneration, but that is not this proceeding. If it had been presented as a claim against the estate, and disputed by the administrator, this court would have had no jurisdiction over the question, and the claimant would have been put to a reference under the statute, or an action against the representative. It follows that, in either aspect of the case, neither the administrator as such nor as trustee succeeding to the trust of the decedent, can be called to account in respect to funds deposited in trust by decedent for the children respectively, and that their remedy, if any, is by an action against the respondent, as having unlawfully appropriated their funds, not in his capacity as administrator ; as it is conceded by the petitioner that the money did not belong to this estate, and any interference with it on the part of the respondent was an unlawful conversion of it, which can only be redressed by action.

It was suggested that the respondent could at most be held to account in respect to the funds deposited in trust for the children, as trustee succeeding by representation to the trust estate of the decedent. I do not undertake, because it is unnecessary for the disposition of this case, to pass upon the effect of section 81 of 2 *Revised Statutes* (6 ed.), p. 1110, and the conflict between Bunn *v.* Vaughan (3 *Keyes*, 345) ; Kane *v.* Gott (24 *Wend.*, 641) ; Savage *v.* Burnham (17 *N. Y.*, 561), and Curtis *v.* Smith (60 *Barb.*, 9), as to its application to personal estate ; but in passing, it is proper to suggest that that section, under the head of uses and trusts, is embraced in title 2, entitled " Of the nature and qualities of estates in real property, and the alienation thereof," and the express trust referred to in that section is defined by

section 55 of the same title, page 1106, prescribing the purposes for which an express trust may be created, and all relating to land, or the rents and profits thereof ; but it seems to me that unnecessary confusion has arisen in considering that section ; for if it be held to only apply to real estate trusts, yet it is quite apparent that there is no law which would do more than vest the property in question in the representative of the deceased trustee, not as absolute owner, but simply holding the title as trustee, and answerable as such to the *cestui que trust.*

I am of the opinion that the learned referee has given altogether too much significance to the entry made by the respondent in form of an inventory of the estate of decedent in his account book, on page 30, for if he had regarded so much of the funds as were deposited by the decedent in trust for the children as such trust, he would not have been likely to enter it as assets of this estate, especially as it appears, in the same account book, and by other evidence, that he proceeded to deposit a portion of the same fund in like trust for some of the children ; and I am constrained to regard that memorandum as a mere statement of the amount he received from the banks through the instrumentality of his letters of administration, and not as a declaration that it belonged to the estate of the decedent.

Having reached this conclusion, it is unnecessary for me to pass upon the question whether, as between the estate in question and the *cestui que trust,* the trust was perfected and valid, or whether any credit should be awarded to the administrator for his support of the infant children of the decedent, though no guardian was appointed.

From a careful consideration of the testimony, and circumstances of this case, I am of the opinion that no assets have been shown in the hands of the administrator belonging to this estate, and that the motion to confirm the report of the referee should be denied.