(8 Misc. Rep. 115.)

## COWEN et al. v. RINALDO et al.

(Supreme Court, Special Term, New York County.   April, 1894.)

1. WILLS—CONSTRUCTION—SUSPENDING POWER OF ALIENATION.
    Testator gave his real estate to his executors in trust "until my son H.
    shall become 21 years of age or die,   *   *   *   and, if he should die before
    my daughter A. becomes 21 years of age, then until she should become
    21 years of age or die," and directed them, on the happening of the event
    specified, to sell the real estate, and invest portions of it for the benefit of
    certain persons for life.   *Held*, that such provision did not suspend the
    power of alienation longer than two lives, since the suspension would not
    be measured by A.'s life if H. should live to be 21 years old or should sur-
    vive A.; and the only uncertainty as to whether the portions of the pro-
    ceeds of the real estate directed to be invested for certain persons will be
    unlawfully suspended depends on whether H. attains the age of 21 years,
    which could be ascertained within the period of a single life.

2. TRUSTS—VALIDITY.
    A devise of real estate in trust "to collect the rent, income, and profits
    of said real estate,   *   *   *   and, after paying therefrom the legacies
    hereinbefore given, interest on mortgages, taxes, assessments, fire in-
    surance, and repairs on said real estate, to apply the remainder   *   *   *
    to paying off and discharging the principal of the mortgages on my real
    estate," creates a valid trust under 4 Rev. St. (8th Ed.) p. 2437, § 55, which
    provides that an express trust may be created to sell, mortgage, or lease
    lands for the benefit of legatees, or for the purpose of satisfying any charge
    thereon.

Action by Newman Cowen and others, executors of the will of
Marks Rinaldo, deceased, and others, for the construction of the
will.   Judgment for plaintiffs.

Wm. Bernard (Daniel G. Rollins, of counsel), for plaintiffs.

Wilson & Wallis, David Leventritt, and Alfred D. Lind, for de-
fendants David and Minnie Rinaldo.

Strong & Cadwalader (George W. Wichersham, of counsel), for
defendants Hyman Rinaldo and wife.

Benjamin Tuska, Ferdinand R. Minrath, Alfred Lyons, and Myer
S. Isaacs, for defendants charitable societies.

A. C. Brown and Maurice B. Blumenthal, guardians ad litem, for
infant defendants.

Goldfogle & Cohen (Charles L. Cohen, of counsel), for defendant
Samuel Rinaldo.

LAWRENCE, J.   Marks Rinaldo died in the city of New York
on the 26th of November, 1892, leaving a last will and testament,
which was duly admitted to probate by the surrogate of the county
of New York on the 21st of April, 1893.   The plaintiffs in this
action are the executors of the will, and the defendants are his
widow, his children, heirs at law, and next of kin, and certain par-
ties and institutions to whom by said will legacies are given.   The
action is brought for the construction of the will, and it is alleged
in the complaint that it is contended by the children, heirs at law,
and next of kin of the deceased that certain clauses of said will
are illegal and void; that the trusts thereby attempted to be cre-
ated are illegal, and contrary to the provisions of the statute relat-

v.28N.Y.s.no.4.—24

ing to the suspension of the power of alienation of personal and real property, and against perpetuities; and that by reason of the invalidity of said clauses of said will, and the trusts thereby attempted to be created, the whole of said will is void and of no effect; but that, in the opinion of the plaintiffs, the said will, and all of its clauses, and the disposition of property thereby made, are valid, legal, and effectual.

The defendant Minnie Rinaldo was the second wife of the testator, and it is recited in the sixteenth clause of said will that she is not entitled to any dower right in the real estate of the testator, as will appear by an antenuptial agreement entered into between the parties; and it is further provided that, should it be held that said agreement is void, then the provisions for her benefit in the will contained shall be in lieu and bar of all her dower or thirds in the testator's estate. By the second and third clauses of the will, annuities are given to two brothers of the testator; and by the fourth, fifth, sixth, seventh, and eighth, legacies are given to the nieces and daughter and brother and sisters of the testator. By the ninth and tenth clauses the sum of one dollar each is given to Hyman and Isaac, sons of the testator. And in the eleventh clause it is stated:

"I make no further provision for my son Isaac, and no other provision for my son Hyman, than hereinafter set forth, because my said sons have been disobedient, have heretofore robbed me of a good deal of money, have otherwise ill-treated me, and for several years have not respected me as they should their father."

By the twelfth, thirteenth, and fourteenth clauses, there are bequests of specific articles to the wife and the testator's minor children, Harry and Amelia; and by the fifteenth clause the testator gives to his wife, for the support of her children, the sum of two hundred dollars—

"For each and every month until my residuary estate shall be divided as hereinafter provided. Upon the happening of such event said annuity shall completely cease."

By the seventeenth clause, the legacies above mentioned are charged upon the real and personal estate of the testator.

The controversy in this case arises upon the construction to be given to the eighteenth and nineteenth clauses of the will. The eighteenth clause is as follows:

"I give, devise, and bequeath to my executors hereinafter named, and such of them as shall qualify, and the survivors or survivor of them, and such successors as they shall appoint as hereinafter provided, all my real and personal estate until my son Harry shall become twenty-one years of age, or die, whichever event shall first happen, and, if he should die before my daughter Amelia should become twenty-one years of age, then until she should become twenty-one years of age, or die before such period; in trust, nevertheless, to collect the rent, income, and profits of said real estate, and the whole of said personal estate, and, after paying therefrom the legacies hereinbefore given, the interest on mortgages, taxes, assessments, fire insurance, and repairs on said real estate, to apply the remainder of said rents of my real estate, together with the income and principal of my personal estate, to the paying off and discharging of the principal of the mortgages on my real estate."

In the nineteenth clause of the will, it is provided that:

"Upon my son Harry becoming twenty-one years of age, or upon his death, and if he should die before my daughter Amelia should become twenty-one years of age, or death before such period, I order my executors, or such of them as may qualify, and the survivors or survivor of them, and the successors of them (as hereinafter provided), to sell all my real estate at public sale, and execute proper deeds therefor, and out of the moneys so realized to pay: (a) To my son David (now residing at Jersey City), the sum of fifteen thousand dollars. (b) To my grandson Lawrence (son of said son David), the sum of five thousand dollars. (c) To my son Samuel the sum of fifteen thousand dollars, if at that time his present wife shall have died, and, if she should still be alive at that time, to invest said sum of fifteen thousand dollars in first mortgage upon improved property in the city of New York, and pay the interest realized therefrom, half-yearly, to my said son Samuel as long as his present wife shall live, and upon her death to pay over to him (said Samuel) said principal sum of fifteen thousand dollars. Should he, however, die before her, then, upon his death, said sum of fifteen thousand dollars shall be divided in equal shares between my sons David, Joel, Edward, and Harry, and my daughters Hannah and Amelia, share and share alike. (d) To my daughter Hannah, wife of Henry Black, the sum of ten thousand dollars, and, in addition thereto, to invest the sum of twenty-five thousand dollars in first mortgage upon improved real estate in the city of New York, and pay the interest realized therefrom, half-yearly, to my said daughter Hannah, and upon her death to pay over said principal sum of twenty-five thousand dollars to her children, in equal shares. Should she, however, die without leaving any children, then said sum of twenty-five thousand dollars shall be divided between my sons Samuel, David, Joel, Edward, and Harry, and my daughter Amelia, in equal shares. (e) To my son Joel, the sum of fifteen thousand dollars. (f) To my son Edward, the sum of fifteen thousand dollars. (g) To my daughter Amelia, the sum of ten thousand dollars, and, in addition thereto, to invest the sum of forty thousand dollars in first mortgages upon improved real estate in the city of New York, and pay the interest realized therefrom, half-yearly, to my said daughter Amelia, and upon her death to pay over said principal sum of forty thousand dollars to her children, in equal shares. Should she, however, die without leaving any children, then said sum of forty thousand dollars shall be divided between my sons Samuel, David, Joel, Edward, and Harry, and my daughter Hannah, in equal shares. (h) To my son Harry, the sum of fifteen thousand dollars. (i) To my son Isaac, the sum of ten thousand dollars, if at that time his present wife shall have died, or he shall have been divorced from her by an absolute divorce, and shall have married a decent Jewish woman. (k) To invest the sum of fifteen thousand dollars in first mortgage upon improved real estate in the city of New York, and pay the interest realized therefrom, half-yearly, to my beloved wife as long as she may live, and upon her death to divide the principal sum between my sons David, Joel, Edward, and Harry, and my daughters Hannah and Amelia, in equal shares."

It is then provided, in the remaining subdivisions of this clause of the will, that, should there be any balance left of his real and personal estate, certain legacies should be paid therefrom to certain societies and charitable institutions in the city of New York, and, if any further balance should remain, that the same should be divided, in equal shares, between his sons and daughters, excluding Isaac and Hyman. By the twentieth clause of the will, it is provided that if either of his children should die before the division of his estate, leaving lawful issue, his, her, or their share should be divided between their children in equal shares, and, in default of such issue, between his remaining children, excluding Hyman and Isaac. In the twenty-second clause, it is recited that no other

provision is made for his wife, because the testator has sufficiently provided for her during her life, and because she owns sufficient real estate in her own right to support her handsomely. By the twenty-third clause of the will, power is given to the executors, until the division of the residuary estate, to execute mortgages on the real estate left by the testator in place and stead of any mortgage and mortgages existing at the time of his death, provided such mortgages should become due, and be called in.

It is claimed on the part of such of the defendants as challenge the validity of the will that the trust attempted to be created by the eighteenth clause thereof is unauthorized and void, and that the same is not one of those trusts which are authorized by section 55, art. 2, tit. 2, c. 1, pt. 2, of the Revised Statutes.[1] It is also claimed that, if such trust is to be regarded as a trust to pay annuities, the valid purpose is nominal, merely, and that it can be seen that it was inserted as a mere cover for an attempted illegal accumulation. The assailants of the will also claim that the power of alienation is illegally suspended by the nineteenth clause of the will, because it may possibly continue during the lives of both Harry and Amelia, and the executors are ordered, after selling, upon the happening of the events above specified, to invest a portion of the proceeds of such real estate, and hold the same in trust during the additional lives of Samuel, Hannah, and Amelia, and that of his wife. This last objection will be first considered.

The rule was laid down in the case of Schettler v. Smith, 41 N. Y. 328, that, in construing dispositions of property with reference to the statutes against perpetuities, any limitation is void, as in violation of that statute, by which the suspension of the power of alienation will not necessarily, under all possible circumstances, terminate within the prescribed period. It is not enough that it may so terminate. It is contended, however, on the part of the plaintiff, that there is nothing in the statute or in this rule which forbids the creation of alternate limitations, or which forbids the creation of alternate periods during which the power of alienation and ownership shall be suspended, provided that the limitation or the period of suspension which actually takes effect or is adopted does not, of itself, offend against the statute. In this case the testator bequeaths and devises his property to his executors in trust until his son Harry should become 21 years of age, or die. It is conceded that Harry is at this time a minor between 15 and 16 years of age, and it therefore follows that if he shall live, and attain the age of 21 years, the estate can be distributed within the period of a single life, and if he attains that age the term of suspension is never to be measured or affected by Amelia's life; and if she should die during Harry's lifetime, and before he attains 21 years of age, the suspension is never measured by her life. I am of the opinion, upon the authority of Savage v. Burnham, 17 N. Y. 561, that this view of the case is correct. The case of Schettler v. Smith is not in opposition, as I understand it, to this view. There the testator gave a portion

[1] 8th Ed., vol. 4, p. 2437.

of his estate to his executors in trust, to pay the income to a son during his life, and on his death to pay the income to his son's widow for her, and upon her death, or, if he left no widow, then upon his death, a remainder over was created.  The court of appeals decided that while the remainder over limited upon the life of the widow was void, because the widow might be a woman not in being at the time of the testator's death, yet the disposition of the property in the alternative should be permitted to take effect.  Grover, J., in delivering the opinion of the court, uses the following language:

"Now, it is clear that the son might have married a woman born after the death of the testator, and consequently one not in being at the death of the testator, and that such woman might have survived the son; and, in the happening of such events, the trust to pay the income to such woman during her life would not have terminated upon the death of two persons in being at the death of the testator.  Consequently, the provision in favor of the son, and the further trusts to convey upon her decease, might suspend the power of alienation of the real for a longer period than two lives in being at the creation of the estate, and also the absolute ownership of the personal property for a period longer than two lives in being at the death of the testator, and were therefore void.  But it will be seen that the clause of the will under consideration makes a disposition of this portion of the property in the alternative, upon the happening of another series of events.  That provision is: 'Or if he [the son] leave no widow, then upon his [the son's] decease to convey as above provided.'  It will thus be seen that, in the contingency of the son's having no widow, the property is to be conveyed to his issue upon his decease; that is, upon the termination of a single life in being at the death of the testator.  Had this been the only direction as to the conveyance, it is clear that it would have been valid, as by no possibility could the power of alienation of the real and absolute ownership of the personal been suspended beyond the period allowed by statute.  The son having died leaving no widow, the inquiry is whether this lawful disposition is rendered invalid by the unlawful disposition attempted to be made in the contingency of his leaving a widow.  It is difficult, upon principle, to see why it should.  But for the prohibition of the statute, both dispositions would have been lawful and valid, and either would have taken effect according to the happening of the events giving it validity.  The statute comes in, and avoids one of the dispositions, leaving the other unaffected by its provisions.  Why should not the latter take effect upon the occurrence of the events upon which it was made to depend?  The authorities sustain its validity.  Lewis on Perpetuities (pages 501, 502) says that where a limitation is made to take effect on two alternative events, one of which is too remote, and the other valid as within the prescribed limits, although the gift is void so far as it depends on the remote event, it will be allowed to take effect on the happening of the alternative one.  That is, in principle, precisely this case, in this aspect.  Vide Crompe v. Barrow, 4 Ves. 681; Savage v. Burnham, 17 N. Y. 561."

See, also, Tiers v. Tiers, 98 N. Y. 568; Cross v. Trust Co., 131 N. Y. 330, 337, 30 N. E. 125; and Purdy v. Haight, 92 N. Y. 446.  In the last case the testator devised real estate to his two sisters during their respective lives, and after their death directed that it could be sold, the proceeds invested, and the income paid to his niece during her life, with remainder to her children, if she should have any.  Upon the death of the survivor of the two sisters the executors sold the land, and invested the proceeds, and paid the income to the niece until the validity of the bequest was questioned upon the accounting.  It was held that the sisters took a life estate as tenants in common, with cross remainders over; that upon the

death of the first sister the two lives were exhausted as to that moiety, so that the, further limitation is void as to the moiety of the sister who first died; but that, as to the part originally taken by that one of the sisters who died last, the limitation for the life of the niece was valid.   See opinion of Andrews, C. J., at page 457.

I am of the opinion, therefore, as is contended by the counsel for the plaintiffs, that the only uncertainty whether the title to the legacies given to Samuel and Hannah will be unlawfully suspended depends upon whether Harry attains the age of 21 years, and that this can be ascertained within the period of a single life.   Even if I am wrong in this conclusion, it does not follow that the whole will is void by reason of an unlawful suspension of the power of alienation, because such suspension can only exist as to the legacies given to Samuel and Hannah, and contained in subdivisions c and d.   These gifts can be readily separated from the others contained in the will, and, even if they are invalid, the general scheme of the testator could not be defeated.   Post v. Hover, 33 N. Y. 593; Manice v. Manice, 43 N. Y. 384; Cross v. Trust Co., supra.

I am of opinion that the trust created by the eighteenth clause is also valid.   Under section 55 of the Revised Statutes above referred to (subdivision 2), an express trust may be created to sell, mortgage, or lease land for the benefit of legatees, or for the purpose of satisfying any charge thereon; and, under the third subdivision, to receive the rents and profits of land, and apply them to the use of any person, during the life of such person, or for any shorter term, subject to the rule prescribed in the first article of this title.   Here, the executors are given power to collect the rents, income, and profits of the real estate, and the whole of the personal estate, and, after paying the legacies, interest on mortgages, taxes, assessments, fire insurance, and repairs on the real estate, to apply the remainder of the rents, together with the income and the principal of the personal estate, to the paying off and discharging of the principal of the mortgages on the real estate.   The case of Cochrane v. Schell, 140 N. Y. 516, 35 N. E. 971, seems to me to be in point on this branch of this case. I cannot accede to the position taken by counsel that the provisions in the eighteenth clause involve accumulations of income for purposes not authorized by the statute, for the reason that there may be enough income annually received without resorting to or accumulating such income, or that the same is a mere cover for an illegal accumulation of income.   It appears by the affidavit of Mr. Roeder that the mortgages now outstanding against the real estate amount, in all, to the sum of $257,500, $120,000 of which is subject to 4½ per cent. interest, and the remaining $137,500 to interest at 5 per cent.   It is not at all clear, therefore, in view of the fact that the widow has elected to take her dower, that there will be any income to apply upon payment of the mortgages, or that the total income will be sufficient to pay the same, and the annuities.   In the case of Cochrane v. Schell, the annuities which were directed to be paid during the continuance of the trust amounted for a portion of the term to $20,000 per annum, and for a subsequent por-

tion to $22,000, and the residuary estate yielded an income of about $90,000. The court said, at page 535, 140 N. Y., and at page 971, 35 N. E.:

"The court is asked to infer that the primary purpose of the testator was to constitute an unlawful trust for accumulation. It may be conceded that to support a trust, under the third subdivision, there must be a purpose within that section, not illusory and nominal, merely, but real and substantial. The objection assumes that the testator contemplated that no contingency could arise where, by loss or shrinkage in value, or bad investment, or change in the rate of interest, the whole or substantially all of the income of the estate would be required to pay the annuities. He plainly did intend that the whole income should be pledged for the payment of the annuities. Is it possible for the court to say that the trust for the payment of annuities amounting to $20,000 was evasive, and veiled the real purpose of the testator?"

I am of the opinion that the plaintiffs are entitled to judgment declaring that the provisions in the will of Marks Rinaldo, which are the subjects of the controversy before me, are legal and valid. Settle findings on two days' notice.